# Exhibit C

# Ballard Spahr
### LLP

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

919 North Market Street, 11th Floor
Wilmington, DE 19801-3034
TEL 302.252.4465
FAX 302.252.4466
www.ballardspahr.com

David J. Margules
Tel: 302.252.4431
Fax: 302 252.4466
margulesd@ballardspahr.com

March 26, 2026

<u>Via U.S. First Class and Electronic Mail</u>

Mr. Marc Kulick
Vesta Realty, LLC
6911 S 66th E. Ave. Suite 100,
Tulsa, OK 74133

Re:    Notice of Manager's Material Breaches of the Vesta Realty Operating Agreement
and Manager's Memorandum

Dear Mr. Kulick:

I write on behalf of Josef Loeffler, who holds a Majority in Interest of the Members of Vesta Realty, LLC ("Vesta Realty") to (i) provide you with written notice pursuant to Section 6.1(d) of the Second Amended and Restated Operating Agreement of Vesta Realty (the "Agreement") of your material breaches of the Agreement, and (ii) advise you that you are removed as Manager of Vesta Realty effective today.

## I.    Bases for Removal as Manager of Vesta Realty

### A.    Theft of Funds

It appears that you have been treating the Vesta entities as your personal piggy bank, using their monies to fund your own extravagant lifestyle and your high-stakes gambling hobby.  We have identified up to **$37,473,988** in credit card charges that appear to have no business purpose, yet which were paid out of accounts maintained by Vesta Realty and to a somewhat lesser extent, Waterford.  Five hundred and nine (509) credit card payments were made from a Vesta Realty account (ending 2390) and a Waterford account (ending in 5492). The payments from the Waterford account are particularly egregious because they were primarily directed to a Chase account held by Leslie Kulick.  We have requested supporting documentation but, to date, you have not provided it.  We must therefore conclude that you are unable to provide supporting documentation because you stole these funds.

Marc Kulick
March 26, 2026
Page 2

We have also identified **$10,241,940** in net transfers to accounts held by you from Vesta Realty, Waterford, Avana, and other Vesta-related entities.  These transfers include 93 transactions, none of which appear to have a business purpose.  We have requested documents to substantiate that these transfers were done for business purposes but, to date, you have not provided any.  Again, we must assume that the reason you have not provided supporting documentation is because you stole these funds.

We also have identified **$4,406,608** in disbursements that were made from Vesta Realty and other Vesta-related entities to Raymond James & Associates (more than $3,000,000), your barber Kandice Dawn Kochell (about $25,000), the infamous high-stakes poker player Kane Kalas (in the amount of $225,000), and to accounts held by unidentified individuals and/or entities.  None of these disbursements appear to be business-related.  We have asked you to explain and or substantiate these disbursements, each of which appears to relate to personal activities.  To date, you have failed to do so, which, again, leads to the conclusion that you stole these funds.

The above disbursements – totaling **$52,122,536** – appear to have been made for your personal benefit.  We also believe there may be other similarly unauthorized transactions of which we are not yet aware due to your failure to provide meaningful financial and related disclosure and, as discussed more fully below, your utter failure to fully comply with a books and records request.

In filings in *Marc Kulick, et al. v. YSA Investments 1, LLC*, C.A. No. 2025-1319-MTZ (Del. Ch.) and *YSA Investments 1, LLC v. Kulick*, C.A. No. N25C-10-309-MTZ (Del. Super. Ct.) ("YSA Actions"),YSA Investments 1, LLC ("YSA") submitted a forensic report ("Forensic Report") analyzing two bank accounts held by Vesta and detailing what it characterized as "Ponzi-like Indicia [in] Vesta Holdings and Vesta Realty Accounts."  The Forensic Report found that during a two-month period—January and February 2025—Vesta paid a total of $3.1 million of your personal credit card bills and various automobile loans.  Then, in March 2025, an additional payment of $1.3 million was made to your personal credit card bill.  The report also found that $1.2 million was transferred from Vesta to your personal bank accounts for non-business purposes.

The Forensic Report further found that during the first several months of 2025, one Vesta account incurred 98 separate overdraft fees and that a different Vesta account had an average daily balance of $82,288, despite having $58.7 million in outflows in January and February 2025.  The expert surmised that "[b]ased on the negative average balance in this account we will be able to demonstrate through cash trading that significant unavoidable commingling of funds occurred in this account," adding "[t]his result is highly correlated with observations made in classic Ponzi-like schemes and is highly demonstrative of commingled sources and uses of funds."  The Manager's Memorandum and the Vesta properties' governing documents strictly forbid such commingling of funds.  We also believe there may be other similarly unauthorized transactions of which we are not aware due to your failure to provide meaningful financial and related disclosure.

Marc Kulick
March 26, 2026
Page 3

###### B.        Breaches of Duties

As you should be aware, you owe fiduciary duties to Vesta Realty and its Members. *Id.* §7.1 ("[A] Manager … will not be liable for damages or otherwise to the Company or any Member for any act, omission or error in judgment performed … ***provided that such act, omission or error in judgment does not constitute bad faith, fraud, gross negligence, willful misconduct or breach of fiduciary duty.***") (emphasis added); *Emprise Bank v. Rumisek*, 215 P.3d 621, 634 (Kan. Ct. App. 2009) (LLC manager owes fiduciary duties to members). Directly or indirectly, you are also the actual or *de facto* Manager of every investment entity involved in the Vesta enterprise.  And your compensation is capped at $6,000 per month, unless a Supermajority in Interest consents otherwise; any reimbursement of expenses must be "reasonable and documented … on behalf of the Company."  *Id.* § 6.4(a)-(b).

You also signed a Manager's Memorandum, which clarifies and affirms your duties as Manager of Vesta Realty.  Among other things, you agreed to:

- "[C]all a weekly budget report meeting for the approval of the Members who wish to be present for this meeting."

- "[H]ire an independent CFO and/or other independent accounting representative selected by super majority vote of the Members … no later than March 1, 2018."

- Produce "[a]ll previous credit card statements" and "any other necessary information for Vesta to keep accurate books, and tax purposes … ."

- "[F]inalize a list of all vendors used by the company in any capacity for 2017."

- "[F]ully comply with internal financial controls, and budget approval process."

- Make distributions only "in accordance with the Operating Agreement."

- Send all receipts to the authorized accounting representative "on a weekly basis."

- Reconcile those receipts "within the month they are received by the authorized accounting representative."

- Ensure that "Vesta and each of the Vesta managed properties will have at least one credit card for use which will ONLY have charges pertaining to that individual asset, and nothing else."

- Ensure that "[e]ach entity and asset will have its own segregated bank account and use of a credit card no later than February 1, 2018."

- Make "no reimbursement of any expenses paid out of a personal bank account or credit card, unless otherwise approved by the Members."

Marc Kulick
March 26, 2026
Page 4

- Use "Expensify, Asana, and Slack … immediately for transparency, accountability, and cohesion as the primary means of written communication between the Members."

The Manager's Memorandum outlines explicit operational requirements to which you agreed. To date, you have breached every one of these requirements.  Among other things, you have not: (i) called a weekly budget report meeting; (ii) hired an independent CFO; (iii) produced previous credit card statements to keep accurate books; (iv) finalized a list of all vendors used by the company; (v) complied with any financial controls; (vi) made distributions in accordance with the Agreement; (vii) sent any receipts to an authorized accounting representative or reconciled any receipts; (viii) used a designated credit card for each Portfolio Entity; (ix) maintained a separate bank account for each Portfolio Entity; or (x) sought approval from Members for expenses paid out of a personal bank account or credit card.  All of these failures constitute breaches of fiduciary duty.

### C.    Unauthorized Loans and Loan Sales

In filings in the YSA Actions, you have admitted that:

- On September 26, 2025, you caused Vesta Holdings to enter into a loan sale transaction with third parties to sell $1.4 million of loans owed to Vesta Holdings by Ridge Best Living, LLC for $700,000.

- On October 3, 2025, you caused Vesta Holdings to enter into a loan sale transaction with third parties to sell $1.4 million of loans owed to Vesta Holdings by Lofts at North Penn Best Living Investors, LLC for $700,000.

- On October 5, 2025, you caused Vesta Holdings to enter into a loan sale transaction with third parties to sell $4.6 million of loans owed to Vesta Holdings by Lofts at North Penn Best Living Investors, LLC for $1.4 million.

- On October 20, 2025, you caused Vesta Holdings to enter into a loan sale transaction with third parties to sell $6 million of loans owed to Vesta Holdings by Lofts at North Penn Best Living Investors, LLC and Woodland Oaks Best Living, LLC for $600,000.

Your sale of $13.4 million of Vesta loans for $3.4 million are egregious breaches of fiduciary duties.  The location and use of the funds received for the sale of debt are unknown to Mr. Loeffler.  We also believe there may be other similarly unauthorized transactions of which we are not yet aware due to your failure to provide meaningful financial and related disclosure.

Vesta Realty serves as the property management company responsible for the day-to-day operations and on-site activities of the properties held by investment entities ("Portfolio Entities") in the Vesta enterprise.

Absent written Supermajority in Interest Member consent, Vesta Realty cannot "[b]orrow funds (other than accounts payable in the ordinary course of business) or grant any

Marc Kulick
March 26, 2026
Page 5

mortgage, deed of trust, security interest or similar lien on any Property." Agreement §6.3(b)(5). The Agreement defines "Property" as "all properties and assets that the Company may own or otherwise have an interest in." As the entity through which you control and operate the enterprise and the Portfolio Entities, Vesta Realty has an "interest" in every Portfolio Entity. Filings in the YSA Actions reveal that you have caused Vesta entities to obtain at least $7.3 million in loans from YSA Investments 1, LLC ("YSA") without Member consent. To secure these loans, you collateralized certain of the Portfolio Entities' property. This renders you in material breach of the Agreement. We also believe there may be other similarly unauthorized transactions of which we are not aware due to your failure to provide meaningful financial and related disclosure.

You cannot "make … a loan to the Company" without the approval of a Supermajority in Interest. *Id.* §3.5(a). In the YSA Actions, you testified, under oath, that you have personally loaned approximately $22 million to various Vesta-related entities. This renders you in material breach of the Agreement.

### D.      Lack of Financial Transparency

As Manager of Vesta Realty, the Agreement imposes obligations upon you with respect to Vesta Realty's finances. First, Vesta Realty funds are to be kept in a separate bank account. *Id.* §8.7. Second, financial statements are to be provided to Members within 90 days after the end of each fiscal year. *Id.* §8.3.

Filings in the YSA Actions indicate that you are commingling funds between the entities, including Vesta Realty. The massive cash inflows and outflows in Vesta bank accounts reflected in the Forensic Report suggest you have not allocated funds in separate banks accounts of any Vesta entity. Moreover, you have not provided Members, including Mr. Loeffler, with financial statements. Thus, you are in material breach of the Agreement.

Further, by letter dated August 25, 2025, Mr. Loeffler requested certain books and records of Vesta Realty and the Portfolio Entities pursuant to § 8.2 of the Agreement. To date, you have prevented Vesta Realty from providing Mr. Loeffler documents to which he is contractually entitled. This constitutes a material breach of the Agreement.

### E.      Unauthorized Dilution of Equity Stakes.

Section 2.4 of the Vesta Capital Operating Agreement requires written consent from existing Members for the admission of new Members. The most recent Vesta Capital K-1 reflects that Mr. Loeffler's economic interest in Vesta Capital has been reduced from 44.55% to 1.7906827%. You have never sought Mr. Loeffler's consent to either admit new Members or seek additional capital contributions and Mr. Loeffler has not approved of the sale of any of his interests. These actions also render you in material breach of the Agreement.

This is in line with what you have done with Portfolio Entities. In 2021, Mr. Loeffler received Schedules K-1 for tax year 2020 reflecting a previously-undisclosed reduction in his

Marc Kulick
March 26, 2026
Page 6

percentage ownership in multiple Portfolio Entities.  This means that you caused the entities to issue additional equity.

When Mr. Loeffler questioned the change, you admitted you brought in new investors.  You refused to provide details about the reason you brought in new investors or why the entities required additional cash, if they did.  You also refused to identify the new investors, to state the consideration paid for the equity, to disclose the uses of the new capital or to provide a full list of Portfolio Entities where such dilution occurred.

As a result, we have been unable to determine how many entities experienced equity dilution, whether there was a legitimate business justification in each case, whether the issuances were arms-length sales to third parties for fair consideration, and whether the proceeds were used for the proper business purposes of the particular entity that sold the equity.  We understand that the equity sales were not justified by the business needs of the issuing entities but were used to cover your defalcations and mismanagement.  The equity issuances violate written agreements barring you from issuing equity without required consents.  The operating agreements of several of the Portfolio Entities mandate "a Majority Vote at a meeting of the Members" to approve creating or issuing any additional equity.  No such votes ever occurred.

Further, the use of equity sales to raise cash to feed your personal needs is classic self-dealing in violation of your fiduciary obligations.  We are aware of at least one lawsuit brought by a Portfolio Entity investor challenging the dilution.  In *Andover Woodscape LLC v. Louis Investments, LLC*, pending in the United States District Court for the Northern District of Oklahoma, an investor alleges that you, acting through Louis Investments, improperly diluted its interest by issuing equity without required approvals for your own benefit.  Such conduct is yet another violation of your duties and obligations.

## II.    Cure Impossibility

Your material breaches of the Agreement are impossible to cure.  Repayment of the funds misappropriated from the enterprise, with interest, would be required as a threshold matter, but the scale of the misappropriation alone and your financial situation renders full remediation a practical impossibility.  Moreover, the loans you caused Vesta Holdings to make to the Portfolio Entities have been sold.  The loans you caused Vesta to obtain from YSA and the security interests you caused Vesta to give in exchange for the loans cannot be cured because: (i) it would require rescission of the loans; (ii) YSA recorded the security interests on the properties; and (iii) some, if not all, of the loans are in default.  The loans you personally made to Vesta would require Vesta to repay $22 million.  The sales of Vesta Realty equity and other Vesta entities' equity would require rescission of those sales.

\*        \*        \*

Your actions constitute numerous and egregious breaches of the Agreement and Memorandum, along with consummate bad faith, fraud, gross negligence, willful misconduct and breaches of fiduciary duty.  Curing your material breaches of the Agreement is impossible

Marc Kulick
March 26, 2026
Page 7


because it would require: (a) repaying every cent improperly taken from the Vesta enterprise, plus interest; (b) rescinding every unauthorized loan funded by any lender; (c) rescinding every unauthorized loan extended by Vesta; (d) rescinding every unauthorized equity sale; (e) indemnifying the Vesta entities for all costs and damages incurred as a result of your misconduct; (f) curing every default on a Vesta credit facility; (g) making all required distributions to investors; and (h) complying fully with your obligations to implement appropriate financial controls and to provide transparency to Mr. Loeffler and other investors. Pursuant to Section 6.1(d)(a) of the Agreement, you are hereby removed as Manager of Vesta Realty today.

Very truly yours,


*/s/ David J. Margules*
David J. Margules



cc:    James V. Masella III, Esq.
       Matthew G. Kussmaul, Esq.
       Alan C. Cardenas-Moreno, Esq.
       Samuel M. Haward, Esq.
       Nick J. Kurt, Esq.