# Exhibit E

**EFiled:  Dec 05 2025 04:30PM EST**
**Transaction ID 77936083**
**Case No. 2025-1319-MTZ**

**EXHIBIT 2**

November 30th, 2025

First United Bank

Attn: Commercial Banking Department / David Keese

1400 West Main St.

Durant, OK 74701

Dear Commercial Banking Department,

Please be advised that YSA Investments 1 LLC ("YSA"), a Delaware limited liability company, as lender, made a series of loans to Vesta Holdings LLC, an Oklahoma limited liability company (the "Company") which are in default. Marc Kulick guaranteed the repayment of the Company's indebtedness to YSA.

You are further advised that, pursuant to the terms of the loan documents and the Guaranty, and in accordance with Articles 8 and 9 of the Uniform Commercial Code, 100% of the certificated and issued membership interests in the Company, have been transferred to YSA effective November 28, 2025. YSA is now the sole member of the Company.

As a direct result:

- Mr. Kulick, the prior member, no longer holds any ownership, economic, or governance rights in the Company.

- YSA is the sole member of Vesta Holdings LLC.

- Aharon Diveroli is the authorized manager of both YSA and the Company and Mr. Diveroli, and not Mr. Kulick, is the only individual currently authorized to act on behalf of the Company with respect to all banking matters, including but not limited to signing checks, withdrawing funds, initiating wires, borrowing, and executing any bank documents.

- A stop payment on all existing payments should be immediately instituted.

Please immediately update your records to reflect the following:

- Sole Member: YSA Investments 1 LLC, a Delaware limited liability company.
- Authorized Manager and Sole Signatory: Aharon Diveroli

&ndash; All prior signing authorities are hereby revoked.

Attached for your reference:

1. Copy of the membership interest certificate issued by the Company that was secured via certain collateral pledge and security agreements in favor of YSA Investments 1, LLC.

2. Amended and Restated Limited Liability Company Agreement of Vesta Holdings LLC (executed copy available upon request)

We will promptly complete and return any new signature cards, banking resolutions, or other forms your institution requires.

Please direct all future correspondence and account-related communications to:

Aharon Diveroli

YSA Investments 1 LLC

8 The Green #23817

Dover, DE 19901

AD@YSAInvestments.com

Thank you for your immediate attention and cooperation.

Sincerely,

Aharon Diveroli

Manager

YSA Investments 1 LLC, Sole Member of Vesta Holdings LLC

-and-

Manager of Vesta Holdings LLC

Enclosures: As listed above

## AMENDED AND RESTATED OPERATING AGREEMENT
## OF VESTA HOLDINGS LLC

This Amended and Restated Operating Agreement (as amended, modified or restated from time to time, this "Agreement") of Vesta Holdings LLC, an Oklahoma limited liability company (the "Company"), is entered into effective as of November 30th, 2025 (the "Effective Date"), by YSA Investments 1, LLC, a Delaware limited liability company, as the Company's sole member (the "Member"). This Agreement replaces the existing operating agreement of the Company together with any and all amendments, restatements, and modifications thereto.

The Member agrees as follows:

1.      **Formation.** The Company is a limited liability company organized under the Oklahoma Limited Liability Company Act (Oklahoma Statutes, title 18, chapter 32), as amended from time to time (the "Act"). The Company's Articles of Organization (the "Articles") were filed November 1st 2022 with the Secretary of State of the State of Oklahoma.

2.      **Name.** The Company's name is Vesta Holdings LLC.

3.      **Purpose.** The Company's purpose is to engage in any lawful act or activity for which limited liability companies may be formed under the Act and to engage in any and all activities that are necessary or incidental to this purpose.

4.      **Office.** The Company's registered office in the State of Oklahoma is the registered office named in the Articles or another place designated by the Manager from time to time in the manner provided by law. The registered agent for service of process is the registered agent named in the Articles or another person designated by the Manager from time to time in the manner provided by law. As of the Effective Date, the Company's registered office is:

> GableGotwals
> c/o Jake Krattiger
> BOK Park Plaza
> 499 W. Sheridan Ave., Ste. 2200
> Oklahoma City, OK 73102

5.      **Members.**

(a)     **Existing Member.** The Member owns 100% of the membership interests in the Company.

(b)     **Additional Members.** The Company may admit one or more additional members with the Member's consent. Before admission of any additional members to the Company, the Member shall amend this Agreement to make changes as the Member determines necessary to reflect the Company's additional members. Each additional member shall execute and deliver a supplement or counterpart to this Agreement, as necessary.

6.      **Management.**

1

(a)    **Authority; Powers and Duties of Manager.** The business, property and affairs of the Company are managed by one manager ("Manager") appointed by the Member. The Manager possesses all rights and powers possessed by manager under the Act and otherwise by law, subject to the provisions of the Act and this Agreement. Except for situations in which the approval of the Members is expressly required by nonwaivable provisions of the Act, the Manager has full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company, to make all decisions regarding those matters and to perform all other acts or activities customary or incident to the management of the Company's business. Persons dealing with the Company are entitled to rely exclusively upon the power and authority of the Manager as set forth in this Agreement. No Member other than a Member who is the Manager has any authority to act for or on behalf of the Company. Without otherwise limiting this Section, the Manager is authorized, on the Company's behalf, to approve the Company's merger, consolidation or conversion or the sale of all or substantially all the Company's assets. The Manager may resign at any time in its sole discretion. Manager need not be a resident of the State of Oklahoma or Member of the Company. Any action taken by the Manager(s), in their capacity as such, is the Company's act and will bind the Company. If at any time the Company has no Manager appointed by the Member, the Member will be deemed to be the Manager.

(b)    **Action by Manager.** Except for situations in which the approval of the Members is expressly required by nonwaivable provisions of the Act, (i) no decision or action of the Manager shall require Member approval, and (ii) Manager shall have the unilateral right and authority to take any action on behalf of the Company to bind or commit the Company without requiring any additional authorization or written notice.

(c)    **Appointment of Officers; Delegation of Authority.** The Manager may, from time to time, designate one or more officers with titles designated by the Manager to act in the Company's name with authority delegated by the Manager (each such designated person, an "Officer"). Any Officer will act under the Officer's delegated authority until the Officer is removed by the Manager. Any action taken by an Officer designated by the Manager under properly delegated authority will constitute the Company's act and will bind the Company. Persons dealing with the Company are entitled to rely conclusively on an Officer's delegated power and authority and any instrument designating the Officer and the authority delegated to him or her.

(d)    **Duties.** Whenever in this Agreement the Manager is permitted or required to make a decision (including a decision that is in such Manager's "discretion" or under a grant of similar authority or latitude), the Manager shall be entitled to consider only such interests and factors as the Manager desires, including its own interests, and shall have no duty or obligation to give any consideration to any interest of or factors affecting the Company or any other Person. If the Manager is permitted or required to make a decision in that Manager's "good faith," the Manager shall act under that express standard and is not subject to any other or different standard imposed by this Agreement or any other applicable law.

2

(e)    **Appointment and Term; Successor Manager.** YSA Investments 1 LLC is hereby appointed as the Company's sole Manager as of the Effective Date, and any Manager prior to the Effective Date is hereby removed. A Manager will hold office until such Manager resigns, dies, becomes incompetent or otherwise vacates his or her position. If at any time the Company does not have a Manager, the holders of a majority of Units will appoint a successive Manager; provided, however, that so long as YSA Investments 1 LLC or any entity directly or indirectly controlling, controlled by, or under common control with YSA Investments 1 LLC (any of which, "Affiliate") is a Member, such entity must approve the appointment or removal of a Manager.

(f)    **Resignation.** A Manager may resign at any time by giving written notice to the Members.  Unless otherwise specified in the notice, the resignation takes effect upon receipt, and the acceptance of the resignation is not necessary to make it effective.

(g)    **Removal of Manager.** A Manager may be removed only upon good cause and upon ninety (90) days written notice. Good cause is defined as the criminal conviction of the Manager for any felony or other criminal offense, not including the violation of any traffic law, municipal ordinance, or other non-violent misdemeanors. Upon notice of removal, a Manager shall pay or cause to be repaid, any and all loans or other obligations any entity directly or indirectly owned, controlled or affiliated with the Manager owes to the Company.

(h)    **Time Devoted to Business.** A Manager will devote an amount of time to the Company's business as such Manager determines necessary for the efficient carrying on of the Company's business.

(i)    **Compensation and Reimbursement.** The Company has or will enter into the Services Agreement with the Manager, providing for, among other things, the payment of an annual fee by the Company to the Manager of Fifty-Thousand Dollars. In addition to any fees payable under this Section or otherwise under this Agreement, each Manager is entitled to reimbursement of ordinary and necessary business expenses incurred by such Manager in connection with such Manager's duties to the Company.

(j)    **Competing Interests; Related Transactions.** The Manager, Members and their respective Affiliates may have business interests and engage in business activities for his or her own account or for the account of others in addition to those relating to the Company, including business interests and activities in direct competition with the Company.  No provision of this Agreement prohibits the Manager or Members from conducting competitive businesses and activities. Neither the Company nor the Members have any rights by this Agreement in any business ventures of a Manager or other Member. The Company may enter into any agreement, arrangement or understanding between the Company and any Member or Manager or any Affiliate of a Member or Manager, or employee or agent of the Company, and no such agreement, arrangement or understanding will be void or unenforceable solely due to it being with such Member, Manager, Affiliate, employee, or agent. Notwithstanding anything to the contrary in this Agreement, any fees or compensation expressly provided for the Manager or any of its Affiliates under the Services Agreement are expressly approved and ratified by the Members.

3

7.    **Limitation of Liability; Indemnification.**

(a)    **Limitation of Liability.** This Agreement does not create or impose any fiduciary duty on any Manager. Furthermore, each of the Members waives all fiduciary duties that, absent waiver, are implied by the applicable law (including the Act), and in doing so, acknowledges and agrees that the Manager's duties and obligations to the Company are only as expressly set forth in this Agreement. The provisions of this Agreement, to the extent that they restrict the duties and liabilities of the Manager otherwise existing at law or in equity, are agreed by the Members to replace such other duties and liabilities of such Manager. Except as otherwise required in the Act, the Company's debts, obligations, and liabilities are solely its debts, obligations and liabilities, and the Manager and Member are not and will not be obligated personally for any of the Company's debts, obligations, and liabilities solely by reason of being a Manager, Member, or participating in the Company's management, as applicable. No Manager, by reason of his or her acting as such, shall be obligated personally for any debts, obligations or liabilities of the Company.

(b)    **Indemnification.** To the fullest extent permitted by the Act, as currently in effect or as amended, substituted or replaced in the future (but, in the case of any amendment, substitution or replacement, only to the extent that the amendment, substitution or replacement permits the Company to provide broader indemnification rights than the Act permitted the Company to provide before the amendment, substitution or replacement), the Company shall indemnify, hold harmless, defend, pay and reimburse any Manager or Officer ("Covered Person") against any and all losses, claims, damages, judgments, fines or liabilities, including reasonable legal fees or other expenses incurred in investigating or defending against such losses, claims, damages, judgments, fines or liabilities, and any amounts expended in settlement of any claims (collectively, "Losses") to which the Covered Person is subject by reason of:

(i)    any act or omission or alleged act or omission performed or omitted to be performed on behalf of the Company, any Member or any Affiliate of the foregoing in connection with the Company or the Company's activities; or

(ii)    the Covered Person being or acting in connection with the business of the Company as a member, stockholder, Affiliate, manager, director, officer, employee or agent of the Company, any Member, or any of their respective Affiliates, or that the Covered Person is or was serving at the Company's request as a member, manager, director, officer, employee or agent of any Person including the Company;

*if* (x) the Covered Person in a manner the Covered Person believed to be in, or not opposed to, the Company's best interests and, with respect to any criminal proceeding, had no reasonable cause to believe his, her or its conduct was unlawful, and (y) the Covered Person's conduct did not constitute fraud or willful misconduct. In connection with the foregoing, the termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of *nolo contendere* or its equivalent, will not, of itself, create a presumption that the Covered Person did not act in good faith or, with respect to any

4

criminal proceeding, had reasonable cause to believe that the Covered Person's conduct was unlawful, or that the Covered Person's conduct constituted fraud or willful misconduct.

(c)    **Reimbursement.** The Company shall promptly reimburse (and/or advance to the extent reasonably required) each Covered Person for the Covered Person's reasonable legal or other expenses (as incurred) in connection with investigating, preparing to defend or defending any claim, lawsuit or other proceeding relating to any Losses for which such Covered Person may be indemnified under this Section 7, but if it is finally judicially determined that the Covered Person is not entitled to the indemnification under this Section 7, the Covered Person shall promptly reimburse the Company for any reimbursed or advanced expenses.

(d)    **Entitlement to Indemnity.** Indemnification under this **Section Error! Reference source not found.** is not exclusive of any other rights to indemnification to which those seeking indemnification are entitled under any agreement or otherwise. This Section 7 will continue to afford protection to each Covered Person regardless of whether the applicable Covered Person remains in the position or capacity by which such Covered Person became entitled to indemnification under this Section 7 and will inure to the benefit of the executors, administrators, legatees and distributees of each Covered Person.

(e)    **Insurance.** To the extent available on commercially reasonable terms and subject to Manager's sole discretion, the Company may purchase, at its expense, insurance to cover Losses covered by the foregoing indemnification provisions and to otherwise cover Losses for any breach or alleged breach by any Covered Person of such Covered Person's duties in such amount and with such deductibles as the Manager(s) determine, but the Company's failure to obtain insurance will not affect the right to indemnification of any Covered Person under this Agreement's indemnification provisions, including the right to be reimbursed or advanced expenses or otherwise indemnified for Losses. If any Covered Person recovers any amounts in respect of any Losses from any insurance coverage, then the Covered Person shall, to the extent the recovery is duplicative, reimburse the Company for any amounts previously paid to the Covered Person by the Company in respect of the applicable Losses.

(f)    **Funding of Indemnification Obligation.** Notwithstanding anything in this Agreement to the contrary, any indemnity by the Company relating to the matters covered in this Section 7 shall be provided out of and to the extent of Company assets only, and no Member (unless a Member otherwise agrees in writing) is personally liable on account of the Company's indemnification obligations or is required to make additional Capital Contributions to help satisfy the Company's indemnification obligations.

(g)    **Savings Clause.** If all or any part of this Section 7 is invalidated by any court of competent jurisdiction, then the Company shall nevertheless indemnify and hold harmless each Covered Person under this Section 7 to the fullest extent permitted by any applicable portion of this Section 7 that is not invalidated and to the fullest extent permitted by applicable law.

(h)    **Amendment.** This Section 7 is a contract between the Company, on the one hand, and each Covered Person who served in such capacity at any time while this Section 7 is in effect, on the other hand, by which the Company and each Covered Person intend to be legally bound. No amendment, modification or repeal of this Section 7 that adversely affects a Covered Person's rights to indemnification for Losses incurred or relating to a state of facts existing before the applicable amendment, modification or repeal will apply in a way that eliminates or reduces the Covered Person's entitlement to indemnification for Losses without the Covered Person's prior written consent.

(i)    **Survival.** This Section 7 will survive the Company's dissolution, liquidation, winding up and termination.

8.    **Exculpation**

(a)    **Standard of Care.** No Manager is or will be liable to the Company or any other Covered Person for any loss, damage or claim incurred by reason of any action taken or omitted to be taken by the Covered Person in good faith reliance on the provisions of this Agreement, so long as the action or omission does not constitute fraud or willful misconduct by the Covered Person.

(b)    **Good Faith Reliance.** A Manager is and will be fully protected in relying in good faith upon the Company's records and upon information, opinions, reports or statements (including financial statements and information, opinions, reports or statements as to the value or amount of the assets, liabilities, distributions or any facts pertinent to the existence and amount of assets from which distributions might properly be paid) of the following Persons or groups: (i) Manager; (ii) one or more of the Company's employees; (iii) any attorney, independent accountant, appraiser or other expert or professional employed or engaged by the Company or on its behalf; or (iv) any other Person selected in good faith by the Company or on its behalf, in each case as to matters that the relying Person reasonably believes to be within the other Person's professional or expert competence.

9.    **Term.** The Company's term is perpetual unless the Company is dissolved and terminated in accordance with Section 13.

10.    **Capital Contributions.** The Member agrees to contribute to the Company cash, property or services as determined by the Member.

11.    **Tax Status; Income and Deductions.**

(a)    **Tax Status.** As long as the Company has only one member, the Company and the Member intend that the Company be treated as a disregarded entity for federal and all state tax purposes and neither the Company nor the Member will take any action or make any election which is inconsistent with such tax treatment. All provisions of this Agreement are to be construed so as to preserve the Company's tax status as a disregarded entity.

6

**(b)    Income and Deductions.** All items of income, gain, loss, deduction and credit of the Company (including, without limitation, items not subject to federal or state income tax) will be treated for federal and all relevant state income tax purposes as items of income, gain, loss, deduction and credit of the Member.

12.    **Distributions.** The Company shall make distributions, if any, to the Member at the times and in the amounts determined by the Manager in its sole discretion.

13.    **Dissolution; Liquidation.**

(a)    The Company shall dissolve, and its affairs shall be wound up upon the first to occur of the following: (i) the written consent of the Member or (ii) any other event or circumstance giving rise to the dissolution of the Company under the Act, unless the Company's existence is continued pursuant to the Act.

(b)    Upon dissolution of the Company, the Company shall immediately commence to wind up its affairs and the Manager shall promptly liquidate the business of the Company. During the period of the winding up of the affairs of the Company, the rights and obligations of the Member under this Agreement shall continue.

(c)    In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied as follows: (i) first, to creditors, to the extent otherwise permitted by law, in satisfaction of liabilities of the Company (whether by payment or the making of reasonable provision for payment thereof); and (ii) thereafter, to the Member.

(d)    Upon the completion of the winding up of the Company, the Manager shall file Articles of Dissolution in accordance with the Act.

14.    **Miscellaneous.**

(a)    **Assignment.** Member shall not sell, assign, pledge, or transfer any portion of its membership interest without the Manager's prior written consent, which may be withheld in Manager's sole discretion.

(b)    **Amendments.** Amendments to this Agreement may be made only with the consent of the Member.

(c)    **Governing Law.** This Agreement shall be governed by the laws of the State of Oklahoma (excluding its conflict of laws rules).

(d)    **Venue.** The Member and Manager irrevocably and unconditionally (a) agree that any suit, action, or other legal proceeding arising out of or relating to this Agreement or any other agreement, document, or instrument delivered pursuant to, or in connection with, this Agreement shall be brought and maintained exclusively in a court of competent jurisdiction in the State of Delaware; (b) consent to the jurisdiction of such courts in any such suit, action, or proceeding as applicable; and (c) waive any objection

7

which it or they may have to the laying of venue or jurisdiction of any such suit, action, or proceeding in such courts. With respect to any claim hereunder, whether legal or equitable in nature, no bond or other security of any kind shall be due by either Party if such claim arises.

(e)     **Attorney's Fees.** Should any action or proceeding be commenced between the parties hereto or their respective representatives concerning the enforcement or interpretation of any of the provisions of this Agreement or the rights and duties of any person or entity hereunder, solely as between the parties hereto or their successors, the party prevailing in such proceedings shall be entitled to the reasonable attorney's fees and expenses of counsel and court costs incurred by reason of such action.

(f)     **Severability.** If any provision of this Agreement is declared to be invalid, illegal or unenforceable, such provision shall survive to the extent it is not so declared, and the validity, legality and enforceability of the other provisions hereof shall not in any way be affected or impaired thereby, unless such action would substantially impair the benefits to any party of the remaining provisions of this Agreement.

(g)     **Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

[*SIGNATURE PAGE ATTACHED*]

THIS OPERATING AGREEMENT is executed and delivered by the undersigned sole Member and sole Manager as of the Effective Date.

SOLE MEMBER:

YSA Investments 1 LLC a Delaware Limited Liability Company

SOLE MANAGER:

Aharon Diveroli

*SIGNATURE PAGE*
*OPERATING AGREEMENT*
*VESTA HOLDINGS LLC*

## MEMBERSHIP INTEREST CERTIFICATE

Certificate Number: 1      Number of Membership Units: 100

VESTA HOLDINGS LLC

an Oklahoma Limited Liability Company

This Certifies that YSA Investments 1, LLC

(Name of Member)

is the owner of one hundred shares out of one hundred total existing shares

Membership Units of Vesta Holdings LLC, an Oklahoma limited liability company, transferable only on the books of the Company by the holder hereof in person or by duly authorized attorney upon surrender of this Certificate properly endorsed.

The membership interests represented by this Certificate are subject to all of the terms, conditions, and restrictions set forth in the Operating Agreement of Vesta Holdings LLC dated November 30, 2025, as may be amended from time to time, which Operating Agreement is on file at the principal office of the Company and incorporated herein by reference.

IN WITNESS WHEREOF, Vesta Holdings LLC has caused this Certificate to