# Exhibit H

**MONTGOMERY McCRACKEN**
Attorneys At Law

**R. Montgomery Donaldson**
Partner

1105 Market Street, 15th Floor
Wilmington, DE 19801-1201
Direct Dial: 302-504-7840
Email: rdonaldson@mmwr.com

November 4, 2025

**VIA E-MAIL**

James V. Masella, III, Esq.
Matthew Kussmaul, Esq.
Ballard Spahr, LLP
919 North Market Street, 11th Floor
Wilmington, DE 19801
*masellaj@ballardspahr.com*
*kussmaulm@ballardspahr.com*

Robert B. Gilmore, Esq.
Samantha Christensen, Esq.
Stein Mitchell Beato & Missner, LLP
2000 K Street, NW, Suite 600
Washington, DC 20006
*rgilmore@steinmitchell.com*
*schristensen@steinmitchell.com*

>       Re:    Josef Loeffler -- Request to Inspect Books and Records of
>              Vesta Realty, LLC and "Managed Entities"

Dear Counsel:

This responds to the October 28, 2025 letter and corresponding document requests sent by counsel at Ballard Spahr, as clarified by information shared during our video meet-and-confer on October 31. Regarding the latter, we thank you for your time and insights.

Preliminarily, this confirms that contrary to our understanding that the October 28 requests were intended to supersede the underlying August 25 records demands (". . . Requestors are willing to substantially narrow the categories of documents requested to those they presently believe are most likely to advance their purposes as members and managers of the Companies"), you have advised that

MONTGOMERY McCRACKEN WALKER & RHOADS LLP

PENNSYLVANIA • NEW YORK • NEW JERSEY • DELAWARE

A PENNSYLVANIA LIMITED LIABILITY PARTNERSHIP
MICHAEL J. FEKETE, NEW JERSEY RESPONSIBLE PARTNER

James V. Masella, III, Esq.
Matthew Kussmaul, Esq.
Robert B. Gilmore, Esq.
November 4, 2025
Page 2

documents we previously offered in response to the underlying August 25 records demands, though not addressed in the October 28 letter, are still desired. Accordingly, we will be providing those documents, subject to the reservation of rights set forth in our October 7, 2025 correspondence (copy attached), as promptly as possible.[1]

By way of further clarification, we maintain that the October 28 document requests do not merely seek a subset of documents sought through the August 25 demands, as is evident form the October 28 requests themselves. On the contrary, they are new document requests directed to information not previously sought (such as, by way of example, bank account information for Vesta Holdings, LLC and an authorization for Mr. Loeffler to "access all affiliated accounts for which he is not already an authorized signatory").

One last point of clarification/item of concern: We have learned that Mr. Loeffler has undertaken a disparagement campaign (that is, a "smear campaign") directed at Mr. Kulick. To date, we know that it has involved statements and accusations made by Mr. Loeffler to various Vesta investors, ranging from accusations of mismanagement to accusations of criminal activity and imminent criminal proceedings. While Mr. Loeffler generally is free to question and discuss the decisions of management and the performance of the underlying investments, accusations of criminal activity – especially coming *before* Mr. Loeffler has received the information he professes to be necessary to enable him to explore such wrongdoing – is most regrettable and highly inappropriate. On a practical level, they are likely to harm, potentially seriously, the enterprises whose best interest Mr. Loeffler has professed to have at heart in connection with his various records demands. Tearing down the house in which Messrs. Loeffler and Kulick both live

---

[1] In terms of timing, we note that Mr. Loeffler has, through multiple sets of counsel, issued separate sets of records demands in both Kansas and Delaware, and currently is litigating yet a third set of demands in the District Court of Tulsa County, Oklahoma. These, on top of his other business-related responsibilities, have commanded and continue to command considerable time and attention from Mr. Kulick.

James V. Masella, III, Esq.
Matthew Kussmaul, Esq.
Robert B. Gilmore, Esq.
November 4, 2025
Page 3

(along with hundreds of other investors) by the propagation of malicious rumors is difficult to reconcile with *anyone's* best interest.  Legally, as you know, unfounded accusations of criminal activity are a very serious undertaking, as to which we reserve all rights of action and remedies.  At a minimum, they are manifestly inconsistent with Mr. Loeffler's duties as a manager, if indeed he is found to be one notwithstanding his years-long abdication of any and all responsibilities associated with that role.  Last, the pursuit of a smear campaign places Mr. Loeffler in a position of adversity that counsels against the provision of certain records and information that may otherwise be provided without concern in the absence of such adversity.

Setting these matters aside, here is where we stand with respect to the October 28 records and information requests:

**1.  Vesta Holdings, LLC Bank Account Information.**

Information conveyed during our October 31 meet-and-confer has created uncertainty about what Mr. Loeffler actually is seeking.  Two accounts are referenced generally (#17035657 and #17035643) in the request, then 9 separate accounts are listed in subpart d. (which, as you explained during our call, is not a request, but rather an explanation of what Mr. Loeffler intends to do with the information sought).  Mr. Loeffler is neither a member nor a manager of Vesta Holdings, LLC.  Accordingly, we decline to provide its bank account statements or to authorize Mr. Loeffler to obtain them from the bank.

With respect to subpart 1.c., we are not willing to grant Mr. Loeffler blanket access to the bank accounts of Vesta Holdings, LLC's affiliates, especially in view of the adversity described above.  Despite Mr. Loeffler holding himself out to be a co-manager with Mr. Kulick and controlling properties in the Vesta brand, Mr. Loeffler does not have this status, without which blanket access to bank accounts cannot be given.  Also, providing blanket access to Mr. Loeffler would allow him to access bank accounts for dozens of entities in which he has no economic interest whatsoever.

James V. Masella, III, Esq.
Matthew Kussmaul, Esq.
Robert B. Gilmore, Esq.
November 4, 2025
Page 4

## 2.  American Express ("Amex") Reimbursements.

This request seeks information regarding transactions in Amex account #262390 labeled "Amex – Marc Kulick" or "Amex – Vesta Realty" from January 1, 2024, through April 30, 2025.  The precise documentation sought includes monthly statements, Cardmember Activity Reports, and Cardmember Spending Analyses (the latter two in electronic format).  We understand from our call that the information sought in this request is to be used to determine whether expenses charged to Vesta Realty were legitimate business expenses.

The problem here is that the particular records sought are grossly over-inclusive on several levels.  As Mr. Loeffler is aware, Mr. Kulick used his personal Amex account to cover both personal and business expenses.  Regarding the latter, the expenses ultimately reimbursed by Vesta Realty all have been and continue to be reviewed annually by Vesta Controller Kara Thomas.  Offering Mr. Loeffler a window on the full range Mr. Kulick's personal, non-business expenses is – again especially considering the adversity described above – neither appropriate nor reasonably tailored to Mr. Loeffler's stated purpose.  Additionally, such access would include information about expenditures at properties in which Mr. Loeffler has no economic interest.

What *can* be provided to meet Mr. Loeffler's concerns is a 2025 breakdown of all business expenses reimbursed by Vesta Realty.

## 3.  Avana, Eastgate, and Waterford Properties.

With respect to subpart a., we decline to provide closing statements but will provide a spreadsheet that shows the amount distributed to each of Vesta's investors in each property.

With respect to subpart b., we offer the following clarification:

James V. Masella, III, Esq.
Matthew Kussmaul, Esq.
Robert B. Gilmore, Esq.
November 4, 2025
Page 5

- **<u>Waterford Apartments</u>**.

  o Waterford Apartments was neither scheduled nor intended to be a §1031 exchange. Instead, the accelerated depreciation from Putnam Green Apartments was used to offset investors' gain from the sale of Waterford Apartments. Investors wanted this outcome because, among other things, when Waterford Apartments was acquired, it was acquired through our partner's (Pratt Street Capital's) §1031 exchange. That entity had little basis, which meant the majority of the sale proceeds were taxable gain to Waterford's investors.

  o Regarding Waterford's Best Living Investors, LLC, the tax return filed with the IRS was not final, but the K-1s were mistakenly marked "final." This will be corrected in the K-1s issued for 2025.

  o Regarding the $75,152 distribution shown in the K-1, this money was invested in Putnam Green Apartments. The investment of this money appears as a distribution to the member tax-wise, and its investment into Putnam Green Apartments allowed the member to receive accelerated deprecation from Putnam Green Apartments.

  o Putnam Investors, LLC is an entity into which new money has been invested for Putnam Green Apartments. Frank Loeffler's trust and Mr. Loeffler collectively invested $380,000 of new money in this entity. Therefore, Putnam Investors, LLC issued them K-1s.

  o Regarding Putnam Green Investment, LLC, Mr. Loeffler's capital account increased because this K-1 was marked "final." When this happens, negative capital accounts must be trued up. However, the increase to his capital account merely balanced depreciation he had received in previous years.

James V. Masella, III, Esq.
Matthew Kussmaul, Esq.
Robert B. Gilmore, Esq.
November 4, 2025
Page 6

- o For clarity, Mr. Loeffler is currently a member of two entities in Putnam Green's ownership structure: Waterford's Best Living Investors, LLC; and Putnam Investors, LLC.

- **Eastgate Apartments.**

  - o After Waterford, Eastgate Apartments was the next property that was sold. Initially, this sale was to be structured as a §1031 exchange, but it ultimately was determined that this approach would not have worked due to timing-related constraints. Accordingly, Parc 1010 Apartments was isolated as the next investment for Eastgate's investors.

  - o Eastgate Apartment Holdings, LLC did not issue final K-1s in 2024. However, because a §1031 exchange was not done and Eastgate Apartment Holdings, LLC did not invest its sale proceeds in another property, Eastgate Apartment Holdings, LLC will issue final K-1s to its members in 2025.

  - o All but a few of Eastgate's investors have received their distribution. A few of those investors remain interested in offsetting their gains from Eastgate's sale. Efforts are underway to locate a property to purchase, but as we previously wrote, Mr. Loeffler's share will be distributed to him since, as it now is understood, he wants it.

- **The Erica Apartments.**

  - o Efforts were still underway with respect to Parc 1010 when The Erica Apartments were sold. The intention was to (i) invest its proceeds into Parc 1010 as a §1031 exchange, and (ii) concurrently invest Eastgate's proceeds into Parc 1010 as a new investment to offset the gain to investors from selling Eastgate (as had been done on Waterford). However, Parc 1010 proved to be exceedingly complicated and was not acquired despite active efforts over the

James V. Masella, III, Esq.
Matthew Kussmaul, Esq.
Robert B. Gilmore, Esq.
November 4, 2025
Page 7

course of approximately a year. Once Parc 1010 was dropped, investors' proceeds from the sale of The Erica were distributed.

o Vesta Avana Investors, LLC did not issue final K-1s in 2024. However, because a §1031 exchange was not done and Vesta Avana Investors, LLC did not invest its sale proceeds in another property, Vesta Avana Investors, LLC will issue final K-1s to its members in 2025.

With best regards,

*R. Montgomery Donaldson*

R. Montgomery Donaldson

Encl.