# Exhibit I

**Fawkes, Thomas R.**

---

**Subject:**                    RE: question on thrive agenta


---------- Forwarded message ---------
From: **Marc Kulick** <marc@vestarealproperty.com>
Date: Fri, Jun 5, 2026 at 4:19 PM
Subject: Re: question on thrive agenta
To: Wes Bird <wbird42@gmail.com>
Cc: Charles Epstein <ceatty@gmail.com>, Ron Marks <ron@tormar.com>, Oliver Trojahn <olivertrojahn@gmail.com>, Sue Rushmore <sue.rushmore@gmail.com>, steve miller <smiller51485@gmail.com>, Ed Schifman <edschifman@gmail.com>, Craig Muir <cmuir553@gmail.com>, Chris Donnelly <flyingchris@pipeline.com>, Babak Varzandeh <varzandehb@gmail.com>, Marc Auerbach <msajp_2000@yahoo.com>, Manish Aggarwal <manish_fmpl@yahoo.com>, m sw <ms778899@gmail.com>, Josef Loeffler <j@jvblue.com>, rlipnermd@gmail.com <rlipnermd@gmail.com>, John Alex Upperman <upperman33@gmail.com>, Josh Wajcman <jwajcman@gmail.com>, herbert.buchbinder@stifel.com <herbert.buchbinder@stifel.com>, Joe Smuckler <josephsmuckler@gmail.com>, Prem Sinha <prem.sinha@perfcap.com>, Tim Roty <timroty22@gmail.com>, Sangeeta Vohra <svohra92@yahoo.com>, SUNJAY K DAWAR <sunjaydawar@gmail.com>, Howard Rosenthal <hgrosey@gmail.com>, Emily Schulhoff <emily@mccallumreese.com>, John Parisi <parisij@aol.com>, Marjorie Robinow <margierobinow@gmail.com>, ssimond@yahoo.com <ssimond@yahoo.com>, Mike Katzman CPA <mike@mdkatzman.com>, Jeffrey Moss <jeff@mlwfinancial.com>, Mark A Fish <markafish@cox.net>, J Bryan Schulhoff <bryan@moonchemical.com>, Shaena Carter <suthursoul@aol.com>, Mike Rushmore <mike.rushmore@gmail.com>, rass851113@gmail.com <rass851113@gmail.com>, Marcabbate <marcabbate@yahoo.com>, griffinholdings@petersens.us <griffinholdings@petersens.us>, Peter Anaradian <peteranaradian@gmail.com>, Anthony Houska <ahouska@craneagency.com>, Troy Johnston <troyjgator@gmail.com>, Roy <roy@wrsmarketing.com>, Ryan Moran <ryanmoran13@gmail.com>, Aaron.Kroll@kutakrock.com <Aaron.Kroll@kutakrock.com>, vince@jvblue.com <vince@jvblue.com>, Kara Thomas <Kara@jvblue.com>, RRay@nwlawok.com <RRay@nwlawok.com>, Rj Rushmore <rj@rjrushmore.com>


Wes,

Please see below:

1. When you say Vesta "bonded over" the receiver appointment, are you saying that BBL/Vesta has appealed the court's order appointing a receiver? ------ Correct

2. If BBL/Vesta does not prevail on that appeal, would the receiver then take control of the property?  ----- Same question as below

3. Is it fair to understand the situation as follows: the court ordered a receiver to be appointed, BBL/Vesta is attempting to suspend that receiver's authority through an appeal bond, and Vesta will only avoid receiver control if it succeeds in that appeal? ------ The appeal will likely take around a year. Since we

1

have purchase offers above $19M and backup refinance options with several lenders, there isn't really a scenario where we face the actual appeal. That being said, the judge said in court that based on the merits of this property he wouldn't have even appointed a receiver but did so due to the totality of the situation. if we have to take the appeal full time that alone provides a strong case. This asset shows no state of decay. Fannie Mae had to testify that occupancy is within industry averages, and that rents are above average. So, to answer your question, we have the time needed to exit this loan through sale (preferable) or refinance if needed. We have a strong case for appeal regarding an asset that on its own merits would have been in the less than 5% of instances where a borrower beats a presigned receiver hearing. If we don't act within the call it 1 year time frame, and we lose the appeal, we would then lose management control over the property but not ownership/equity.

Marc

On Fri, Jun 5, 2026 at 5:10 PM Wes Bird <wbird42@gmail.com> wrote:

Hi Marc,

Thank you for clarifying your position on the receiver issue. I want to make sure I'm understanding the process correctly. My understanding is that the 5/25 docket entry states the court ordered a receiver to be appointed, and that the court set bond at $100,000. I also understand there may be an Oklahoma procedure that allows a party to suspend a receiver's authority by appealing the receiver appointment order and filing an approved appeal bond. Can you clarify the following for the group?

1. When you say Vesta "bonded over" the receiver appointment, are you saying that BBL/Vesta has appealed the court's order appointing a receiver?

2. If BBL/Vesta does not prevail on that appeal, would the receiver then take control of the property?

3. Is it fair to understand the situation as follows: the court ordered a receiver to be appointed, BBL/Vesta is attempting to suspend that receiver's authority through an appeal bond, and Vesta will only avoid receiver control if it succeeds in that appeal?

Thank you,

Wes

On Fri, Jun 5, 2026 at 3:43 PM Marc Kulick <marc@vestarealproperty.com> wrote:

Charlie

I understand that the media has latched on. They also have no idea what the foreclosure process is. Im trying to explain it to you which is a mistake because you seem to be unable to get past the article.

For all other investors (many of you have seen or heard me explain this):

In our loan documents with Fannie Mae we consent to a receiver being appointed in event of default. We have credible arguments about the defaults but there is less than a 5% chance in any receivership hearing that we will win. The difference between winning and losing is minimal because the borrower has protections in Oklahoma. One such protection is the ability to "bond over" the appointment.

So, in our last hearing the judge appointed a receiver and Vesta posted the bond and offset the appointment. I said above the difference in winning or losing is minimal and quite frankly for reasons I shouldn't get into on an adversarial thread it may even be better to post the bond than to win outright. But that's litigation strategy.

Overall, my media coverage is horrendous. If you trace it back it is all very circular but my responsibility is to put my head down, focus on getting the 2nd mortgages lifted, have a solid back up plan in case that doesnt happen, and protect investor equity despite what angry investors, or the Media says about me.

Marc

**Marc Kulick,** *CEO*

6911 S 66th E Ave., Ste. 100
Tulsa, OK 74133
(913) 277-9535
marc@vestarealproperty.com

On Fri, Jun 5, 2026, 3:35 PM Charles Epstein <ceatty@gmail.com> wrote:

```
marc - i will send the article out to everyone ; let them decide - send
us all a copy of the court documents -  receiver - the court  - this is
not from  your documents - this is a court order - vesta has
been removed a s the property manager for this property - is that
correct or is that incorrect - if i was an investor, i sure would like
to be notified of this situation but you chose not

where is the information on each of the properties ? stil to be busy to
do that ?
```

*CHARLES I. EPSTEIN, ESQ.*
27 Warren Street, Suite 304
Hackensack, NJ 07601
Tel:  201-489-7600
Fax:  201-489-2128
e-mail:  **ceatty@gmail.com**

*Of counsel to:  COX PADMORE SKOLNIK & SHAKARCHY LLP*
*630 Third Avenue, 23rd Floor*
*New York, NY 10017*

On Fri, Jun 5, 2026 at 4:27 PM Marc Kulick <marc@vestarealproperty.com> wrote:

Charlie

I very clearly said that Vesta remains in full control. Receivers are presigned in our loan agreements. However we can offset the appointment with a bond which we did.

I know you think there is some big conspiracy and things being hidden from you but there isnt. Your level of animosity is both incorrect and unhelpful.

**Marc Kulick,** *CEO*

6911 S 66th E Ave., Ste. 100
Tulsa, OK 74133
(913) 277-9535
marc@vestarealproperty.com

On Fri, Jun 5, 2026, 3:23 PM Charles Epstein <ceatty@gmail.com> wrote:

```
i have the copy of the article that was posted on line when i googled
Vesta realty receivership which discusses the receiver  appointed by
the judge for the Drexel Flat property - i believe that is lexington
commons ; if i wrong please tell me - everyone can go on line and read
the article - your name is mentioned prominently in the article -
posted May 25, 2025

Do I have to scan the article and send it to everyone in order to
obtain the truth?
```

*CHARLES I. EPSTEIN, ESQ.*
27 Warren Street, Suite 304
Hackensack, NJ 07601
Tel:  201-489-7600
Fax:  201-489-2128
e-mail:  **ceatty@gmail.com**

*Of counsel to:  COX PADMORE SKOLNIK & SHAKARCHY LLP*
*630 Third Avenue, 23rd Floor*
*New York, NY 10017*

On Fri, Jun 5, 2026 at 4:17 PM Marc Kulick <marc@vestarealproperty.com> wrote:

Charlie,

We have discussed on several updates the procedure in OK. There is no receiver at the asset. It is unfortunate that you seem to try to find ways to discredit me, but I do understand your frustrations so I try to take it in stride.

My response on updates and K1s remains the same from yesterday. I am working on an update though again with a ruling from Delaware still not delivered actual tangible progress remains stalled.

Marc

On Fri, Jun 5, 2026 at 4:07 PM Charles Epstein <ceatty@gmail.com> wrote:

```
marc - it's unfortunate that you did not disclose to the group that
the Lexington Commons property was placed in receivership on may 25 ,
2026. Is this part of the new and open relationship with investors?

we don't get monthly reports on each of th properties , we don't
get  Kis ; all we get are excuses and lack of payments

thanks, charlie
```

***CHARLES I. EPSTEIN, ESQ.***
27 Warren Street, Suite 304
Hackensack, NJ 07601
Tel:  201-489-7600
Fax:  201-489-2128
e-mail:  **ceatty@gmail.com**

*Of counsel to:  COX PADMORE SKOLNIK & SHAKARCHY LLP*
*630 Third Avenue, 23rd Floor*
*New York, NY 10017*

On Thu, Jun 4, 2026 at 5:55 PM Marc Kulick <marc@vestarealproperty.com> wrote:

Charlie

Its unfortunate you feel that way -- although nothing new. I have sent several updates through the portal. I am due for an additional one this week although there just isnt much news.

We do have multiple K1s ready. I am getting payments out to the firm that has those ready and as soon as each entity pays they will be released.

Marc

**Marc Kulick,** *CEO*

6911 S 66th E Ave., Ste. 100
Tulsa, OK 74133
(913) 277-9535
marc@vestarealproperty.com

On Thu, Jun 4, 2026, 4:47 PM Charles Epstein <ceatty@gmail.com> wrote:

```
marc - the silence, lack of information and lack of ki's are
deafening - not a lot of credibility when no information is being
sent out to investors - just sounds like a lot of excuses - a lot of
the same , thanks
```

***CHARLES I. EPSTEIN, ESQ.***

27 Warren Street, Suite 304
Hackensack, NJ 07601
Tel:  201-489-7600
Fax:  201-489-2128
e-mail:  **ceatty@gmail.com**

*Of counsel to:  COX PADMORE SKOLNIK & SHAKARCHY LLP*

***630 Third Avenue, 23rd Floor***
***New York, NY 10017***

On Tue, May 19, 2026 at 11:09 AM Marc Kulick <marc@vestarealproperty.com> wrote:

Charlie,

Please see below:

```
marc-

i would appreciate a status on each of the matters -----
```

- ```
  We are currently offering a "best and final" sale. We have 4
  offers.The original group, a local developer from whom we have
  purchased in the past, a national group, and a group I don't
  know much about who initially tried to lowball us but is
  working on a "much improved" offer. Additionally, a group from
  South Carolina is trying to enter the frey even though it is
  late. The only developer willing to go under contract while we
  are still fighting YSA is the local developer and he is not the
  highest bidder. We should have all best and final offers by the
  ```

- end of the week and my plan was to send a breakdown to investors sharing our standing.
  - YSA litigation. The April 9th oral arguments came and went. We were there for about an hour and the chancellor "took the matter under advisement" and adjourned the court. That means she is now deciding. We had hoped that decision would be made already. Though, as I said in my update to all investors 10 days ago the length of time is not inherently a bad sign. We remain just as confident in our position. We will notify all investors of the ruling, whether good or bad, and at that time, we will be able to explain the path forward.
  - Fannie Mae Foreclosure. Nothing new to report here. The hearing will be the end of this month. Though we have a hearing today on another Fannie deal, I hope we can make progress understanding how the judges will view this and open a line of communication with Fannie.

as well a status of the furnishing of each of the tax returns now ----- PwC is the most expensive group we work with but frankly they were the best at meeting deadlines. We have taken the deals away from the firm in Baltimore that was doing a number of returns because they hadn't started yet. PwC is taking on the majority of those and should be done within 3 weeks or so. We had another firm that only had 4 of our returns but they got returns out promptly and they are taking an few more. All returns should be done by mid June.

also, was there a response to Wes Bird on his questions, if so, can it be resent ; while the conversation is polite - i as well as others are looking at receiving direct results ------ There were multiple responses between Wes and I. Those responses are on this thread.

we should be receiving monthly or the equivalent of monthly statements on the status of each property so we are not all in the dark ----- Agreed. We can do a monthly P&L and cash flow statement for each asset.

On Mon, May 18, 2026 at 12:18 PM Charles Epstein <ceatty@gmail.com> wrote:

> marc- i would appreciate a status on each of the matters as well a status of the furnishing of each of the tax returns now - also, was there a response to Wes Bird on his questions, if so, can it be resent ; while the conversation is polite - i as well as others are looking at receiving direct results - we should be receiving monthly or the equivalent of monthly statements on the status of each property so we are not all in the dark , thanks , charlie

7

***CHARLES I. EPSTEIN, ESQ.***

27 Warren Street, Suite 304

Hackensack, NJ 07601

Tel:  201-489-7600

Fax:  201-489-2128

e-mail:  **ceatty@gmail.com**

*Of counsel to:  COX PADMORE SKOLNIK & SHAKARCHY LLP*

**630 Third Avenue, 23rd Floor**

**New York, NY 10017**

On Thu, May 14, 2026 at 4:57 PM Marc Kulick <marc@vestarealproperty.com> wrote:

Ron

Wires are out ive seen several people confirm receipt.

I will track your particular fed ref and send

Marc

**Marc Kulick,** *CEO*

6911 S 66th E Ave., Ste. 100

Tulsa, OK 74133

(913) 277-9535

marc@vestarealproperty.com

On Thu, May 14, 2026, 3:52 PM Ron Marks <ron@tormar.com> wrote:

I have not seen any proceeds hitting my account from Thrive Argenta as of yet....have any of you??? This property sold six months ago....🙈🙈🙈
Sent from my iPhone

On May 5, 2026, at 11:22 AM, Oliver Trojahn <olivertrojahn@gmail.com> wrote:

Marc,

Do you know if Thrive Agentas settlement will be released to investors this week?"

Oliver
Get Outlook for iOS

8

**From:** Charles Epstein <ceatty@gmail.com>
**Sent:** Tuesday, May 5, 2026 10:41:53 AM
**To:** Marc Kulick <marc@vestarealproperty.com>
**Cc:** Wes Bird <wbird42@gmail.com>; Sue Rushmore <sue.rushmore@gmail.com>; steve miller <smiller51485@gmail.com>; Ed Schifman <edschifman@gmail.com>; Craig Muir <cmuir553@gmail.com>; Chris Donnelly <flyingchris@pipeline.com>; Babak Varzandeh <varzandehb@gmail.com>; Auerbach Marc <msajp_2000@yahoo.com>; Manish Aggarwal <manish_fmpl@yahoo.com>; Ron Marks <ron@tormar.com>; m sw <ms778899@gmail.com>; Josef Loeffler <j@jvblue.com>; rlipnermd@gmail.com <rlipnermd@gmail.com>; John Alex Upperman <upperman33@gmail.com>; Oliver Trojahn <olivertrojahn@gmail.com>; Josh Wajcman <jwajcman@gmail.com>; herbert.buchbinder@stifel.com <herbert.buchbinder@stifel.com>; Joe Smuckler <josephsmuckler@gmail.com>; Prem Sinha <prem.sinha@perfcap.com>; Tim Roty <timroty22@gmail.com>; Sangeeta Vohra <svohra92@yahoo.com>; SUNJAY K DAWAR <sunjaydawar@gmail.com>; Howard Rosenthal <hgrosey@gmail.com>; Emily Schulhoff <emily@mccallumreese.com>; John Parisi <parisij@aol.com>; Marjorie Robinow <margierobinow@gmail.com>; ssimond@yahoo.com <ssimond@yahoo.com>; Mike Katzman, CPA <mike@mdkatzman.com>; Jeffrey Moss <jeff@mlwfinancial.com>; Mark A Fish <markafish@cox.net>; J Bryan Schulhoff <bryan@moonchemical.com>; suthursoul@aol.com <Suthursoul@aol.com>; Mike Rushmore <mike.rushmore@gmail.com>; rass851113@gmail.com <rass851113@gmail.com>; Marcabbate <marcabbate@yahoo.com>; griffinholdings@petersens.us <griffinholdings@petersens.us>; Peter Anaradian <peteranaradian@gmail.com>; Anthony Houska <ahouska@craneagency.com>; Troy Johnston <troyjgator@gmail.com>; Roy <roy@wrsmarketing.com>; Ryan Moran <ryanmoran13@gmail.com>; Aaron.Kroll@kutakrock.com <Aaron.Kroll@kutakrock.com>; vince@jvblue.com <vince@jvblue.com>; Kara Thomas <Kara@jvblue.com>; RRay@nwlawok.com <RRay@nwlawok.com>; Rj Rushmore <rj@rjrushmore.com>
**Subject:** Re: question on thrive agenta

```
thank you for your response - but still it would be nice
to have them already
```

*CHARLES I. EPSTEIN, ESQ.*

27 Warren Street, Suite 304

Hackensack, NJ 07601

Tel:  201-489-7600

Fax:  201-489-2128

e-mail:  **ceatty@gmail.com**

*Of counsel to:  COX PADMORE SKOLNIK & SHAKARCHY LLP*

*630 Third Avenue, 23rd Floor*

*New York, NY 10017*

On Tue, May 5, 2026 at 9:47 AM Marc Kulick <marc@vestarealproperty.com> wrote:

Charlie,

Last year we split the portfolio into multiple different CPAs. In truth it went better than in previous years. PwC finalized and distributed the returns for all deals prior to April 15th. We are still waiting for responses from the other 2 firms we are using. I do believe Ethan in my office expected feedback from both of those firms late last week, but we haven't received the ETAs yet. We will share them with investors immediately upon receipt

Marc

On Mon, May 4, 2026 at 5:56 PM Charles Epstein <ceatty@gmail.com> wrote:

```
good evening all : i am writing this note on a
different topic. Has anyone received any k1 or tax
statements since the original emailing of some of
them. I was promised a response by last Friday and
when I didn't receive one, I wrote again and today I
received "we have to check with the accountants ". If
I recall , we received this same response constantly
last year and I believed that pursuant to Marc's
comments, these types of situations would be rectified
. Any news or information would be greatly appreciated
, thanks, charlie
```

**CHARLES I. EPSTEIN, ESQ.**
27 Warren Street, Suite 304
Hackensack, NJ 07601
Tel:  201-489-7600
Fax:  201-489-2128
e-mail:  **ceatty@gmail.com**

*Of counsel to:  COX PADMORE SKOLNIK & SHAKARCHY LLP*
*630 Third Avenue, 23rd Floor*
*New York, NY 10017*

On Mon, May 4, 2026 at 10:34 AM Wes Bird <wbird42@gmail.com> wrote:

Hi Marc,

Thank you for your response and for taking the time to provide additional context. My goal here is to better understand the facts and ensure I'm interpreting the available information correctly, and I think it would be helpful for the broader investor group to have clear, direct answers to a few specific points below.

To keep things organized and easy to follow, would you mind replying line by line? These questions are based on my understanding of the materials and documents available, and I welcome any clarification if I've misunderstood anything.

1. When do you expect to share the AR aging report showing the amount outstanding from each party and the age of each balance?

2. You said: "The collateral pledged to Lotor was spread across my membership interests and my promote interests in several deals. The 2nd mortgages were released because they were not Lotor's collateral. Lexington never made payments to Lotor, and Lexington investors were never to be held responsible for the debt."
   - If Lexington investors were never held responsible for the debt, then why does this second mortgage with LOTOR LLC name Bartlesville Best Living, LLC as the mortgagor, with your notarized signature on this second mortgage?
   - Page 2 of this mortgage grants a security interest in the property described in Exhibit A. Exhibit A lists out lots One (1), Two (2), Three (3), Four (4), and Five (5) of LEXINGTON COMMONS, an addition to the City of Bartlesville, Washington County, Oklahoma. Does this define Lexington Commons as the collateral?
   - Your notarized signature page also states this: A POWER OF SALE HAS BEEN GRANTED IN THIS MORTGAGE. A POWER OF SALE MAY ALLOW THE LENDER TO TAKE THE MORTGAGED PROPERTY AND SELL IT WITHOUT GOING TO COURT IN A FORECLOSURE ACTION UPON DEFAULT BY THE MORTGAGOR UNDER THIS MORTGAGE.
   - Was this second mortgage in effect for approximately 6 months?
   - If your understanding is that your membership and promote interests were the only collateral, then why does your notarized signature appear on this LOTOR LLC second mortgage that lists Lexington Commons as the mortgaged property and Bartlesville Best Living, LLC as the mortgagor?
   - Can you share any evidence to support your claim that your membership and promote interests were the only collateral?
   - What specifically was this $1,250,000 used for?
   - Were the proceeds of the $1,250,000 LOTOR mortgage held in accounts outside of Lexington (e.g., Vesta), and if so, were those amounts reflected in the A/R balance of $3,254,787 on 3/17/26?

3. You said: "Lexington has it's own bank accounts where only Lexington rents are deposited. Transfers to separate entities are not, in my non-lawyer opinion, close to "commingling" funds. To be clear—and it's totally possible I am wrong—I believe the definition of commingling funds is using funds from a single bank account for both business and personal purposes. That never happened.

11

- o For reference below, the Lexington operating agreement says: "Bank Accounts. The Company shall maintain the funds of the Company in one or more separate bank accounts in the name of the Company, and shall not permit the funds of the Company to be commingled with the funds of any other Person."
- o The Lexington operating agreement also includes this definition:" "Person" includes individuals, partnerships, corporations, limited liability companies, trusts, and all other forms of entities. "
- o After reading the Lexington operating agreement and its definition of "Person" to include individuals, partnerships, corporations, limited liability companies, trusts, and all other forms of entities, do you believe Lexington funds are permitted to be held in an account in the name of Vesta, or any other account outside of Lexington?

4. You said: "To the best of my knowledge once reconciliations are completed, AP and AR should be very close. However, as I am human and can make mistakes, I have attached a 10% interest rate to anything that could be owed."
    - o In the 3/17/26 update from Vesta, AR was listed at $3,254,787 and expense reconciliations were estimated at $1,500,000. Netting the two would result in a positive source of cash at the time of a sale of $1,754,787. Are you now saying that you expect the AR and AP to be approximately equal? Would that result in $1,754,787 less net cash to distribute than the preliminary return analysis sent on 3/17/26?

5. You said: "So, you are saying basically 'Marc you moved money out that's why you didn't pay mortgage or make distributions.' That is both incorrect and unsupported by the bank statements which I know you have seen."
    - o Out of transparency to investors and to stand behind your statement, will you please share the 2025-2026 Lexington bank statements here for all to see?

6. You said: "We only stopped making mortgage payments after Newmark notified us that they were no longer servicing the loan."
    - o I'm sorry, I must have missed this, and that's helpful to understand. Are you saying Lexington has not made payments to the Fannie mortgage for approximately seven months now (going back to October 2025 being the first missed payment per the foreclosure notice), because you do not know where to send the money?
    - o Would Lexington have been able to make those mortgage payments if you knew where to send the money?
    - o The mortgage is about $55k/month by my math using the refi rate and amounts shared in previous Lexington updates. With Lexington not currently making mortgage payments, there would be five mortgage payments not made at the time of the

3/17/26 update. That amounts to roughly $275,000 of mortgage payments not made. However, cash at the 3/17 Lexington update was $15,551. Can you clarify whether Lexington cash that would have otherwise been used for these mortgage payments was transferred to Vesta and recorded as AR during that period?

7. You said: "The accounts payable is created when payments are made on behalf of a property in this case Lexington."

   o I agree that this is how it should be done, but if this is your current accounting practice (creating AP on Lexington's books at the time payments are made on behalf of Lexington) then wouldn't the AP balance already be known, instead of estimating it at $1.5 million?
   o Why is the movement of cash from Lexington to Vesta creating AR instead of reducing AP?
   o Is cash being moved from Lexington to Vesta before the AP ("expense reconciliations" as you've named it) is recorded, and is this why you are using AR to record these cash movements?

Thank you,

Wes

On Fri, May 1, 2026 at 10:50 AM Marc Kulick <marc@vestarealproperty.com> wrote:

Wes,

The accounts payable is created when payments are made on behalf of a property in this case Lexington. But, more importantly the narrative you are creating from the questions just isn't correct. You make several references to the Fannie Mae payments. So, you are saying basically "Marc you moved money out that's why you didn't pay mortgage or make distributions."That is both incorrect and unsupported by the bank statements which I know you have seen.

We only stopped making mortgage payments after Newmark notified us that they were no longer servicing the loan. They told me that someone from the new servicer would be in touch. That never happened which is highly unusual. When a servicer changes, you typically receive a full welcome letter with updated payment information and a request for a phone call. That never happened. I have a large record of my attempts from October to December to contact anyone at Fannie Mae. Right before Christmas I got my first contact on a different deal from the attorney

representing Fannie. So, the narrative that we couldn't afford the mortgage because we transferred money just isn't correct.

To the best of my knowledge once reconciliations are completed, AP and AR should be very close. However, as I am human and can make mistakes, I have attached a 10% interest rate to anything that could be owed.

To your questions about the bank accounts. Lexington has it's own bank accounts where only Lexington rents are deposited. Transfers to separate entities are not, in my non-lawyer opinion, close to "commingling" funds. To be clear—and it's totally possible I am wrong—I believe the definition of commingling funds is using funds from a single bank account for both business and personal purposes. That never happened.

The collateral pledged to Lotor was spread across my membership interests and my promote interests in several deals. The 2nd mortgages were released because they were not Lotor's collateral. Lexington never made payments to Lotor, and Lexington investors were never to be held responsible for the debt.

Again, the narrative your questions build is "Marc you moved money out and you even had a loan from Lotor LLC that was released this is why you couldn't pay the mortgage and thus hurt investors." As I said above that isn't even supported by the bank statements. The brunt majority of transfers (dollars wise) from Lexington to VH happened in 2023. We didn't have any mortgage issues until Newmark began severing their servicing.

I understand that this is frustrating and/or scary for most investors. I understand that some people trust me, some are on the fence, and some don't. I can tell you that there are numerous deficiencies with Fannie Mae's filings across our portfolio, Lexington included. In fact in one of our deals a big investor sent us an 11-page document detailing issues with Fannie's processes, including the refusal to send us any payoff statements, accounting, ect. Case and point, we were supposed to have our first hearing with Fannie on Lexington on April 21st. Fannie delayed it because they weren't prepared. It was rescheduled to April 28th where it was pushed again. At present we have no date for that hearing which should show you a little about this process.

Marc

On Thu, Apr 30, 2026 at 3:03 PM Wes Bird <wbird42@gmail.com> wrote:

Hi Marc,

I appreciate your responses. To make it easier for the group to follow, would you mind replying line by line below? These questions are based on my understanding of the materials provided, and I welcome any clarification if I've misunderstood anything.

14

1. As mentioned, you'll share the AR aging report showing the amount outstanding from each party and the age of each balance.
2. AR and AP accounting practices:
   - You said "The AR accurately tracks each instance in which money was transferred out of Lexington and sent to Vesta Holdings."
     - Vesta and Lexington are two separate legal entities, correct?
     - As separate entities, what is the purpose of these transactions to create AR by moving cash between the two separate entities, Lexington to Vesta?
     - Without AP created, Lexington does not yet owe Vesta, correct?
     - If AP was created first (debit to increase expense, credit to increase AP), that would limit the amount of cash transferred from Lexington to Vesta once AP goes down to 0.
     - Without creating the AP balance first, is it possible for you to know when you have transferred more cash to Vesta than the expenses Vesta has paid on Lexington's behalf?
     - Without knowing the AP balance, but still transferring cash out of Lexington (creating AR), how did you know when Lexington could no longer afford to make the Fannie mortgage payments?
   - You said "To the extent that there is money owed from VH to Lexington it will be sent to investors on or before a liquidation event. Additionally, we will pay a 10% interest rate in that event."
     - Does this imply that Vesta may have transferred more cash from Lexington than was required to cover expenses paid on its behalf?
     - You said you are "very far behind on reconciling the payables that have accumulated", and do not know what the actual AP balance is. Is it then possible, and unknown to you, whether Lexington actually had the cash to continue paying the Fannie mortgage?
     - 10% interest is a generous rate to pay on any money Vesta owes Lexington. But as an investor, I would rather see Lexington cash go toward paying the mortgage. Which specific months has Lexington failed to make Fannie mortgage payments?
   - "Bank Accounts. The Company shall maintain the funds of the Company in one or more separate bank accounts in the name of the Company, and shall not permit the funds of the Company to be commingled with the funds of any other Person."

15

- This text above is directly from the operating agreement for Lexington.
- Your statement: "The AR accurately tracks each instance in which money was transferred out of Lexington and sent to Vesta Holdings." Can you help clarify how the practice of transferring Lexington cash to Vesta and recording it as A/R aligns with this provision of the Operating Agreement?

3. Second Mortgage from LOTOR LLC on Lexington (unrelated to YSA)
   - On the Washington county records I found a second mortgage on Lexington from LOTOR LLC for $1,250,000 that was added on 9/24/25. I've attached that here. Can you confirm that this second mortgage was placed on the Lexington property, and by whom?
   - Can you share the key terms of that loan (interest rate, maturity, fees)?
   - Was this LOTOR LLC mortgage disclosed to and approved by the Fannie lender? If so, can you share that consent?
   - What specifically was this $1,250,000 used to pay for?
   - An email update dated 3/17/26 from Vesta shows Lexington had $15,551 in cash and AR of $3,254,787. Were the proceeds of the $1,250,000 LOTOR mortgage held in accounts outside of Lexington (e.g., Vesta), and if so, were those amounts reflected in the A/R balance of $3,254,787?
   - The LOTOR LLC mortgage was released on 3/25/26 (attached) – what was the source of funds to pay this mortgage back?
   - During the period of this second mortgage from LOTOR LLC from 9/24/25 to 3/25/26, how many Fannie mortgage payments were not made?

Thank you,

Wes

On Wed, Apr 29, 2026 at 2:54 PM Marc Kulick <marc@vestarealproperty.com> wrote:

Wes,

I was initially going to respond to each question line by line but I actually believe I can give a better response in paragraph form.

AR other is to some extent a "catch all" for any money owed to a property for any reason. I will provide a full breakdown of AR per your request.

The other side of the AR transaction is the payable. I am unfortunately very far behind on reconciling the payables that have accumulated. For instance, after the refinance insurance wasn't escrowed by the lender,

and each insurance renewal over the last 3 years has been paid for by Vesta Holdings. However, the payables for those payments haven't been entered yet. We also have substantial pending credit card. reconciliations

The AR accurately tracks each instance in which money was transferred out of Lexington and sent to Vesta Holdings. Once my Reconciliations are completed the AR will be offset by AP. To the extent that there is money owed from VH to Lexington it will be sent to investors on or before a liquidation event. Additionally, we will pay a 10% interest rate in that event.

I used a placeholder of 1.5m of AP because I needed any number to be one I was 100% sure of. Please keep in mind that the amounts that have been paid by Vesta on behalf of Lexington have not been reconciled as discussed above also do not yet appear on the financials. Additionally the financials dont show cap ex which is tracked on a balance sheet typically.

I am not charging the properties for my legal actions in the 2nd mortgage case.

I typically complete reconciliations on an annual basis; however, as I said I have fallen behind. While that's not ideal, the reconciliation will be completed and shared with investors for transparency.

Again, in the event there is money owed from VH to Lexington it will carry a 10% interest rate.

Marc

On Tue, Apr 28, 2026 at 11:38 AM Wes Bird <[wbird42@gmail.com](mailto:wbird42@gmail.com)> wrote:

Hi Marc,

Thanks for making yourself available to answer questions on this thread.

I had previously shared the questions below with the group, and I'm reposting them here in case it's helpful to address them directly. I'm hoping you can provide some clarification for the benefit of the broader investor group.

These questions are focused on understanding the company's financial position, cash flows, and intercompany balances.

1. Accounts Receivable balance of $3,254,787:
   - Why is this considered a source of cash at the time of sale?

17

- o The flyer from Vesta's email lists Total Rental Income at $2,307,533. That means A/R would be over 1.4 years worth of total rental income from the property, unless this A/R is not from rent.
- o Has Vesta been borrowing money from Lexington, and if so, for what items?
- o Has Lexington been paying expenses on behalf of Vesta, and if so, for what items? I'm trying to understand why Lexington would have such a large intercompany receivable from Vesta.
- o Is that why this A/R is being shown as a source of cash at the time of sale, because that's when Vesta would pay it off?
- o Lexington is only holding cash of $15,551. Has Vesta been making transfers of Lexington cash into Vesta accounts (increasing the A/R balance)? If so, for how long?
- o Can you help me understand whether this large A/R balance had any impact on the pause in investor distributions since 2024?
- o Have any distributions been made from Lexington in 2025 or 2026?
- o **I would like to request a detailed accounts receivable aging report of this $3,254,787 to show both who has amounts due to Lexington and age of each amount.**

2. Expense Reconciliations (Estimated) of ($1,500,000):
    - o How can the flyer's income statement given to potential buyers be accurate if this expense reconciliation number is not yet known?
    - o Is this $1.5 million in Expense Reconciliations (Estimated) already included in the flyer's Income Statement for the property?
    - o Total Expenses in the flyer is $1,382,511. Of this $1,382,511, what amount has been paid directly by Lexington (not Vesta)?
    - o The estimated expense reconciliation of $1.5 million is greater than 1 full year of Lexington's Total Expenses ($1,382,511), according to the flyer. How is it possible that Lexington owes Vesta for more than 1 full year's worth of expenses?
    - o **I would like to request Lexington's general ledger, income statement, and a detail report of the expense reconciliation items.**

3. Will Vesta be bearing all expenses related to the removal of the 2nd mortgage(s) from the Lexington property, as the origination is unrelated to Lexington?

4. Intercompany balances:

- o The net of the A/R and Expense Reconciliation given is a positive $1,754,787. If these are to and from Vesta (as intercompany accounts), does that mean Vesta is holding Lexington cash, upwards of $1,754,787?
- o What is Vesta's policy for how often the Expense Reconciliations are completed?
- o What are the terms of Lexington's A/R due from Vesta?

Thank you,
Wes

On Tue, Apr 7, 2026 at 2:07 PM Marc Kulick <marc@vestarealproperty.com> wrote:

Sue

It was posted this morning!

I do see on your follow up email that you found it. Thank you!

**Marc Kulick,** *CEO*

6911 S 66th E Ave., Ste. 100
Tulsa, OK 74133
(913) 277-9535
marc@vestarealproperty.com

On Tue, Apr 7, 2026, 1:41 PM Sue Rushmore <sue.rushmore@gmail.com> wrote:

When will the Thrive Argenta info be posted? Haven't seen anything yet. Marc - it can be draft if taxes aren't finalized. Would just like to know ball park what we can expect to receive from this investment.

On Mon, Apr 6, 2026 at 11:17 AM Marc Kulick <marc@vestarealproperty.com> wrote:

Steve

Ethan on my team is just formatting the update though this morning has been busier than I expected. The update will be sent through the portal to the Thrive Argenta investors.

Marc

**Marc Kulick,** *CEO*

19

6911 S 66th E Ave., Ste. 100
Tulsa, OK 74133
(913) 277-9535
marc@vestarealproperty.com

On Mon, Apr 6, 2026, 10:18 AM steve miller <smiller51485@gmail.com> wrote:

Marc just checking back on this. I'm cc'ing Sue and rj Rushmore into this chain as well

Thanks much.

On Fri, Apr 3, 2026 at 6:35 PM Marc Kulick <marc@vestarealproperty.com> wrote:

Steve,

1) Timing --- Yes, Final disbursements will be made by wire transfer. My estimation is on or before May 8th.
2) Amounts --- I do not have an updated waterfall analysis. To ensure precise calculations, I will send an update with projected final returns to Argenta investors by Monday morning.

Marc

On Fri, Apr 3, 2026 at 6:02 PM steve miller <smiller51485@gmail.com> wrote:

Thanks marc. Two follow ups. Do you have any sense on timing of the payment as well as rough estimate on amount as a percent of the original capital we invested (pre any distributions).

On Fri, Apr 3, 2026 at 5:55 PM Marc Kulick <marc@vestarealproperty.com> wrote:

Steve,

We are finalizing the tax returns. Arkansas has out of state taxes that must be deducted upon sale. Once that is finalized we will publish the final waterfall between the TIC entities and complete distributions. We will also publish the tax accounting for the avoidance of doubt. There is no 1031 exchange on this deal, though, I do have a few investors who are wanting to use their proceeds for dilutive/recap opportunities. While that option will be available no one will be forced to participate.

20

Again, I have said multiple times that I have no issue with 3rd parties administering funds from sales. In fact, I welcome that as the questions surrounding the disposition process will be directed at the title/lawyers who coordinate those distributions.

Marc

On Fri, Apr 3, 2026 at 5:41 PM steve miller <smiller51485@gmail.com> wrote:

> I'm cc'ing marc in here (but erasing the history) and adding some of my other friends
>
> Marc as I think you know there's a question on thrive agenta around was it sold and if so what is the plan with proceeds. I'm in that one and I think a bunch of others in my friend circle so be helpful to get a post here, and to be most efficient I'm bringing the groups together for the answer
>
> Thanks

> --
> **Marc Kulick,** *CEO*
>
>
> 6911 S 66th E Ave., Ste. 100
> Tulsa, OK 74133
> (913) 277-9535
> marc@vestarealproperty.com

--
**Marc Kulick,** *CEO*


6911 S 66th E Ave., Ste. 100
Tulsa, OK 74133
(913) 277-9535
marc@vestarealproperty.com


--
Sue Rushmore

21

970-471-2102 (mobile)

--

**Marc Kulick,** *CEO*

6911 S 66th E Ave., Ste. 100
Tulsa, OK 74133
(913) 277-9535
marc@vestarealproperty.com

--

**Marc Kulick,** *CEO*

6911 S 66th E Ave., Ste. 100
Tulsa, OK 74133
(913) 277-9535
marc@vestarealproperty.com

--

**Marc Kulick,** *CEO*

6911 S 66th E Ave., Ste. 100
Tulsa, OK 74133
(913) 277-9535
marc@vestarealproperty.com

--

**Marc Kulick,** *CEO*

6911 S 66th E Ave., Ste. 100
Tulsa, OK 74133
(913) 277-9535
marc@vestarealproperty.com

--
**Marc Kulick,** *CEO*


6911 S 66th E Ave., Ste. 100
Tulsa, OK 74133
(913) 277-9535
marc@vestarealproperty.com


--
**Marc Kulick,** *CEO*


6911 S 66th E Ave., Ste. 100
Tulsa, OK 74133
(913) 277-9535
marc@vestarealproperty.com

23