IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

**JOHN ALEX UPPERMAN, et al.,**

Plaintiffs,

*v.*

**MARC KULICK, et al.,**

Defendants.

Case No. 25-CV-383-GKF-SH

## YSA INVESTMENTS 1, LLC'S
## EMERGENCY MOTION TO INTERVENE

YSA Investments 1, LLC, under Federal Rule of Civil Procedure 24(a)(2) and, alternatively, Rule 24(b), moves to intervene in this action for the limited purpose of responding to Plaintiffs' Motion for Appointment of a Federal Equity Receiver [Dkt. 6] and Plaintiffs' Ex Parte Motion for Order Setting Expedited Hearing [Dkt. 7]. The requested receivership relief is extraordinary. It seeks immediate and plenary authority over Defendants, including their influence over underlying properties spanning multiple jurisdictions, over which other courts have already ordered the appointment of receivers and over which control is in the process of being divested from Defendants by YSA. Because the requested relief would directly and immediately affect YSA's substantial property, financial, contractual, and governance interests in the underlying assets, intervention is necessary before this Court adjudicates any request for expedited receivership relief.

## BACKGROUND

Plaintiffs seek appointment of a receiver over Marc Kulick and his property-management entities, invoking Fed. R. Civ. P. 66 and the Court's inherent equitable powers. Plaintiffs assert that a receiver should be installed on an

emergency basis to take control of operations, collect and disburse rents, manage books and records, direct litigation, collaborate with lenders on dispositions, investigate conduct, and even exercise sole authority to commence bankruptcy cases on behalf of the receivership entities. The motion also requests an "automatic stay"-style injunction against litigation involving the receivership entities or the property they manage.

Plaintiffs' Motion comes on the heels of a major legal victory in Delaware Court of Chancery by YSA, a secured lender with far more at stake than Plaintiffs. *Compare* Ver. Compl., Dkt. 2 at 37, ¶ 74 (alleging Upperman is owed $2,525,000 in outstanding loans) *with* Plfs' Mot. to Appoint Receiver, Dkt. 6 at 23, ¶ 61 (acknowledging YSA has "claims exceeding $930 million"). After a contested trial over the validity of YSA's second mortgages on the underlying properties, the Delaware court confirmed that Kulick and related Kulick-controlled entities gave YSA "expansive rights to take actions against … [the] Properties owned by the Intermediate Holding Companies [controlled by Kulick]." Post-Trial Memorandum Opinion, *Kulick, et al. v. YSA Invs. 1, LLC*, Case No. 2025-1319-KSJM (Del. Ch. June 9, 2026), Dkt. 2-4 at 34. These expansive rights include the ability to record second mortgages in addition to "taking any action against … any real or personal property owned by [the property-level entities]" in its "sole discretion to secure and protect its interests." *Id.* Armed with those determinations, YSA has begun recording Special Warranty deeds in lieu of

2

foreclosure to exercise its rights, take control of the underlying properties, and stabilize and repair the collateral to preserve and maximize the value of the assets.

With no advanced notice or coordination despite being aware of YSA's interests,[1] Plaintiffs filed this action and asking for a receiver on an expedited basis to control the underlying properties.

ARGUMENT

**1.  YSA is entitled to intervene as of right.**

Under Fed. R. Civ. P. 24(a), the Court must permit intervention as a matter of right for any party that (1) timely applies, (2) claiming an interest relating to the property at issue in the action, (3) whose interest may be impaired or impeded, and (4) where such interest is not adequately represented by the existing parties. *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1103 (10th Cir. 2005). Courts generally construe Rule 24 liberally in favor of intervention. *Id.*

Here, YSA, the proposed intervenor, satisfies all four requirements for intervention as a matter of right.

**1.1  The motion is timely.**

YSA brings this motion promptly after learning of Plaintiffs' Receiver Motion and Ex Parte Request for Expedited Hearing. Both were filed at some point on Thursday, June 25. Neither were provided to YSA as a matter of course (as YSA is

---

[1] Plaintiffs' own filings in this Court expressly acknowledge the ongoing transition of control from Defendants to YSA, thereby displacing Defendants from their ability to continue devaluing the assets. *See* Dkt. 6 at 11, ¶ 25 (citing YSA's position to "now control Vesta Holdings and … direct all cash transfers and borrowing for the entity" and that it "now has lawful ownership and control over Property Entities.").

3

not a defendant in the action), nor courtesy (despite Plaintiffs' knowledge of YSA's pervasive interest in the underlying properties over which they seek a receiver's broad control). Regardless, YSA independently learned of Plaintiffs' suit and motion for expedited relief to appoint a receiver over property it has a substantial secured interest in and moves now to intervene less than a business day after the discovery.

The receivership request is still pending, and intervention now will not prejudice any party; it will ensure the Court hears from a directly affected stakeholder before entering relief that could immediately and substantially alter the governance and operation of numerous entities and assets.

### 1.2 YSA has a direct, substantial, and legally protectable interest.

As noted above, Plaintiffs acknowledge in their Verified Complaint that YSA has a judicially recognized interest in the property-level entities and the underlying assets. *See* Dkt. 2 at 23, ¶ 55; Dkt. 2-4 at 34. After defaulting on their loans, Defendants now owe YSA in excess of $930 million. Dkt. 2-4 at 17. The loan documents granted YSA broad remedial rights, including the authority to proceed against any of Defendants' real property, including the commercial real properties, to secure repayment of the loans. Dkt. 2-4 at 32. YSA "exercised that right by recording second mortgages" on the properties. *Id.* Following the decision in Delaware Court of Chancery, YSA now holds fee simple title to the underlying properties by virtue of Special Warranty Deeds in lieu of foreclosure, while simultaneously retaining its recorded mortgage liens and related rights. These

instruments give YSA a present ownership interest plus a continuing secured creditor interest in the very properties that are the subject of the receivership request. Any receivership order will directly affect YSA's rights to possess, control, and realize value from that collateral. By all accounts, YSA has a direct, substantial, and legally protectable interest in the underlying properties.

### 1.3 Entry of receivership relief without intervention may impair YSA's ability to protect its interests.

If a receiver is appointed before YSA is heard, YSA's rights may be impaired in multiple ways. The proposed receiver would control operations and financial reporting; interact with lenders and creditors; determine whether to sell, hold, or restructure assets; control litigation positions; and potentially exercise authority to commence bankruptcy cases on behalf of receivership entities. Plaintiffs also have requested an injunction tantamount to an automatic stay that could constrain stakeholder enforcement and litigation options.

Those consequences are not hypothetical. Plaintiffs expressly seek the broadest possible powers permitted by law, including turnover of accounts and records, litigation control, and authority over entity-level decision making across multiple jurisdictions. Once those powers are vested in a receiver, YSA's ability to protect its interests through contractual, governance, or consensual restructuring mechanisms may be materially impeded as a practical matter.

### 1.4 The existing parties do not adequately represent YSA's interests.

The burden to show inadequate representation is minimal. *See Tri-State Generation & Transmission Ass'n Inc. v. N.M. Pub. Regul. Comm'n*, 787 F.3d 1068,

1072 (10th Cir. 2015) (collecting cases); *see also Tribovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (requirement satisfied when the existing parties' representation of applicant's interest "may be" inadequate and the burden of making such a showing "should be treated as minimal.") But even on the face of Plaintiffs' own verified statements, the record establishes that the existing parties' interests are distinct from YSA's.

One of the stated bases for Plaintiffs' Motion to Appoint Receiver is to oppose YSA's interests. They seek a federal equity receiver with sweeping powers, expressly to combat "lender remedies against the Vesta portfolio," including to fight YSA in Delaware Court of Chancery litigation over the ownership rights in the properties. Dkt. 6 at 10-11, ¶ 25. And their position on the appropriate method to remedy Kulick and Kulick-related entities' mismanagement of the properties is to opt for the extraordinary one as the only viable solution. *Id.* at 6, ¶¶ 62-63. YSA, by contrast, intends to oppose that remedy because a less drastic, targeted alternative exists to remove and displace the current control party and stabilize the relevant assets without imposing portfolio-wide receivership. As such, Plaintiffs can't be said to adequately represent YSA's interests.

The same is true for Defendants. Beyond being directly at odds with YSA in the Delaware Court of Chancery litigation over the property and contractual interests in the underlying assets, Defendants, per Plaintiffs' attestations, have obstructed information requests, resisted governance efforts, used appeal-bond mechanisms to thwart property-level receiverships, and continued operating under

a structure that YSA seeks to change. Taken together, Defendants' conduct is best understood as a strategic attempt to preserve existing control and resist immediate judicial intervention altogether, rather than to support the stakeholder-protective transition of control that YSA is in the process of implementing.

**2. Alternatively, permissive intervention is warranted.**

If the Court concludes YSA is not entitled to intervene as a matter of right, it should nevertheless allow permissive intervention under Rule 24(b). The standard for permissive intervention is less demanding than the standard for intervention as of right and lies within a court's discretion. *See City of Stilwell v. Ozarks Rural Elec. Coop. Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996). Rule 24(b) provides that a court may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The terms "claim or defense" are interpreted broadly so as not to preclude permissive intervention. *See City of Herriman v. Bell*, 590 F.3d 1176, 1184 (10th Cir. 2010) (providing that "intervention has been allowed in situations where the existence of any nominate claim or defense is difficult to find"). In exercising its discretion, the court is to consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

YSA's defenses share common questions of law and fact with Plaintiffs' receivership request, including the existence and extent of current mismanagement, the necessity of extraordinary equitable relief, the availability of less drastic alternatives, and the practical consequences of the relief sought.

While intervention may momentarily delay the proceedings from the currently scheduled expedited timeline, it will not unduly do so. To the contrary, at this stage, YSA has as much, if not more, at stake in these properties than the existing parties. YSA's participation will sharpen the central issue now before the Court: whether a federal equity receiver is truly necessary or whether another immediate control-changing remedy can protect the same interests with less disruption and fewer collateral consequences.

## PROPOSED POSITION ON RECEIVERSHIP

Without waiving fuller argument to be presented in a separately filed response, YSA anticipates showing that Plaintiffs' requested receivership is overbroad relative to the actual needs of the moment. Plaintiffs seek portfolio-wide, enterprise-level displacement of control, claiming this extraordinary relief is the only viable option. YSA intends to show that a workable alternative accomplishes the critical objective—removing or neutralizing the present controlling actor and stabilizing the affected assets—without imposing the full machinery of a federal receivership.

That distinction matters because Plaintiffs themselves acknowledge the extraordinary nature of the remedy, yet ask the Court to confer the broadest possible powers on a proposed receiver, including litigation control, subpoena-supported investigation, and sole bankruptcy authority for receivership entities. The Court should not enter such sweeping relief, especially on an expedited basis, without hearing from a directly affected stakeholder prepared to present a

8

narrower alternative that addresses the same urgent problems while preserving as much stakeholder governance and value as possible.

In that vein, Counsel for YSA intends, upon being granted its request to intervene, to ask for additional time to get up to speed and respond to the motion to appoint receiver, which for the above reasons is a drastic remedy with far-reaching implications. For certain, Plaintiffs have a longitudinal relationship with Defendants; have been aware of and involved with their investment with Defendants and seen this situation develop in real-time; and had sufficient time to research and brief three contemporaneously submitted filings, including a 59-page Complaint with 119 pages of exhibits, a 27-page Motion for Appointment of a Federal Equity Receiver with 136 pages of exhibits, and an 8-page Ex Parte Motion for Order Setting Expedited Hearing on Motion for Appointment of a Federal Equity Receiver. Under the circumstances, YSA, upon intervention, will seek relief in the form of a more reasonable opportunity to investigate the underlying facts, research the pertinent authorities, and submit targeted briefing before the Court issues a ruling of this significance.

## CONCLUSION

For the reasons above, YSA requests that the Court:

1. Grant this Motion to Intervene under Rule 24(a)(2), or alternatively under Rule 24(b);

2. Permit YSA to participate in all proceedings concerning Plaintiffs' Motion for Appointment of a Federal Equity Receiver and Request for an Ex Parte Hearing;

3. Set this Motion for expedited consideration;

4. Decline to grant ex parte receivership relief before YSA is heard; and

5. Grant such other and further relief as the Court deems just and proper.

DATED: June 27, 2026

Respectfully submitted,

_/s/ Andrew J. Hofland_
Andrew J. Hofland, OBA No. 33396
Justin A. Lollman, OBA No. 32051
Fenella J. Flanagan, OBA No. 36387
**HOFLAND/LOLLMAN**
401 S. Boston Ave., Suite 500
Tulsa, Oklahoma 74103
Telephone:    918.221.7440
Fax:               918.221.7556
_ahofland@hoflandlollman.com_
_jlollman@hoflandlollman.com_
_fflanagan@hoflandlollman.com_

**COUNSEL FOR INTERVENOR
YSA INVESTMENTS 1, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2026, I electronically filed the foregoing document with the Clerk of Court for the U.S. District Court for the Northern District of Oklahoma using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who are registered CM/ECF users in this case.

*/s/ Andrew J. Hofland*
Andrew J. Hofland