IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

**JOHN ALEX UPPERMAN, et al.,**

Plaintiffs,

*v.*

**MARC KULICK, et al.,**

Defendants.

Case No. 26-CV-383-GKF-SH

---

**INTERVENOR YSA INVESTMENTS 1, LLC'S
RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR
APPOINTMENT OF A FEDERAL EQUITY RECEIVER**

---

Andrew J. Hofland, OBA No. 33396
Justin A. Lollman, OBA No. 32051
Fenella J. Flanagan, OBA No. 36387
**Hofland/Lollman**
401 S. Boston Ave., Ste. 500
Tulsa, Oklahoma 74103
Telephone: 918.221.7440
Fax:            918.221.7556
*ahofland@hoflandlollman.com*
*jlollman@hoflandlollman.com*
*fflanagan@hoflandlollman.com*

**Counsel for Intervenor
YSA Investments 1, LLC**

**Dated:** July 21, 2026

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

BACKGROUND .................................................................................................1

ARGUMENT AND AUTHORITIES ................................................................. 6

   I.   This Court lacks jurisdiction to appoint a receiver under the "prior exclusive jurisdiction" doctrine. .................................................................7

   II.  Federal law prohibits this Court from appointing a receiver because doing so would interfere with ongoing state cases. ............................................... 8

      A.   *Younger abstention counsels that this Court should abstain from appointing a federal receiver.* .....................................................................................9

      B.   *The Anti-Injunction Act prohibits this Court from enjoining ongoing state court proceedings.* ...................................................................................... 11

   III.  Plaintiffs have no right to request a receiver. ...............................................12

      A.   *Plaintiffs have no property rights that would justify the appointment of a receiver.* .................................................................................................... 12

      B.   *Plaintiffs improperly seek a receiver as a standalone conservatory measure, unmoored from any equitable claims seeking to dispose of the property.* .......... 14

   IV.  Even if the Court could appoint a receiver, it should not do so....................15

      A.   *There are adequate, less drastic remedies to safeguard the properties.* ............ 15

      B.   *Plaintiffs overstate the imminent danger to the properties.*............................ 16

      C.   *Appointing a receiver would do more harm than good.*................................. 16

      D.   *Equitable principles disfavor granting an equitable remedy.* ........................ 18

      E.   *The Court should not rush into such a drastic remedy without requiring notice to all interested parties.* .................................................................. 20

Conclusion.....................................................................................................21

## TABLE OF AUTHORITIES

CASES

*Am. Bank & Tr. Co. v. Bond Int'l Ltd.*,
2006 WL 2385309 (N.D. Okla. Aug. 17, 2006) ......................................... 15

*Axonic Multifamily Bridge SPV (BC) Tr. v. Riverpark Best Living, LLC*,
No. CJ-2026-2741 (Tulsa Cnty., Okla.) ....................................................... 3

*The Bancorp Bank v. Muntage Best Living, LLC*,
No. CJ-2026-5195 (Okla. Cnty., Okla.) ....................................................... 3

*Biodiversity Conservation All. v. Jiron*,
762 F.3d 1036 (10th Cir. 2014) ................................................................... 19

*CGC Holding Co. v. Hutchens*,
974 F.3d 1201 (10th Cir. 2020) ................................................................... 18

*Fed. Home Loan Mortg. Corp. v. Spark Tarrytown, Inc.*,
813 F. Supp. 234 (S.D.N.Y. 1993) ......................................................... 20, 21

*Fleet Bus. Credit, L.L.C. v. Wings Rests., Inc.*,
291 B.R. 550 (N.D. Okla. 2003) ................................................................. 15

*FNMA v. Bartlesville Best Living, LLC*,
No. CJ-2026-88 (Wash. Cnty., Okla.) ........................................................ 2, 4

*Freedman, Levy, Kroll & Simonds v. Mendelson*,
11 F. App'x 288 (4th Cir. 2001) .............................................................. 9, 11

*Gordon v. Washington*,
295 U.S. 30 (1935) ................................................................................. 14, 16

*Hedges v. Dixon Cnty.*,
150 U.S. 182 (1893) ..................................................................................... 19

*Hicks v. Miranda*,
422 U.S. 332 (1975) ..................................................................................... 10

*In re O K Inv. Corp.*,
560 P.2d 969 (Okla. 1977) ............................................................................. 9

*Inland Empire Ins. Co. v. Freed*,
239 F.2d 289 (10th Cir. 1956) .............................................................. 6, 12, 17

*Juidice v. Vail*,
    430 U.S. 327 (1977) ................................................................. 9, 10

*Kelleam v. Md. Cas. Co. of Baltimore*,
    312 U.S. 377 (1941) ................................................12, 13, 14, 18

*Kulick v. YSA Invs. 1, LLC*,
    No. 2025-1319-KSJM (Del. Ch. June 9, 2026) ........................ 2, 3

*Lane & Bodley Co. v. Locke*,
    150 U.S. 193 (1893) ...................................................................18

*Lebbos v. Judges of the Superior Ct.*,
    883 F.2d 810 (9th Cir. 1989) .......................................................9

*Marshall v. Marshall*,
    547 U.S. 293 (2006) .................................................................7, 8

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*,
    457 U.S. 423 (1982) .....................................................................9

*Nottebaum v. Leckie*,
    31 F.2d 556 (3d Cir. 1929) ........................................................ 20

*Penn Gen. Cas. Co. v. Pennsylvania ex rel. Schnader*,
    294 U.S. 189 (1935) .....................................................................7

*Pennzoil Co. v. Texaco, Inc.*,
    481 U.S. 1 (1987) .................................................................. 9, 10

*Pusey & Jones Co. v. Hanssen*,
    261 U.S. 491 (1923) ................................................................. 13

*Quint v. Vail Resorts, Inc.*,
    89 F.4th 803 (10th Cir. 2023) ................................................... 11

*RSS CSMC2021 v. Adventus US Realty #4 LP*,
    No. 1:23-cv-08231 (S.D.N.Y. Sept. 22, 2023) ........................... 17

*Skirvin v. Mesta*,
    141 F.2d 668 (10th Cir. 1944) ................................................... 15

*Skycam, LLC v. Bennett*,
    2014 WL 347064 (N.D. Okla. Jan. 30, 2014) ............................. 8

*Steffens v. Steffens*,
    955 F. Supp. 101 (D. Colo. 1997) ........................................ 9, 10

*Superior Oil Corp. v. Matlock*,
    47 F.2d 993 (10th Cir. 1931) ................................................................7

*Tenn. Pub. Co. v. Carpenter*,
    100 F.2d 728 (6th Cir. 1938) ............................................... 20

*Term Fund III MRA Seller LLC v. Montgomery Best Living, LLC*,
    No. CJ-2026-5022 (Okla. Cnty., Okla.)........................................3

*U.S. Bank Nat'l Ass'n v. Kimble Dev. La., LLC*,
    No. 20-01315 (W.D. La. Nov. 24, 2020) .................................... 17

*Wells Fargo Bank v. 181 W. Madison Property LLC*,
    No. 1:26-cv-3416 (N.D. Ill. Apr. 24, 2026).............................. 17

*Younger v. Harris,*
    401 U.S. 37 (1971) ...............................................................8, 9

**RULES AND STATUTES**

12 O.S. § 993(C) ................................................................................3

28 U.S.C. § 2283 ............................................................... 11

**SECONDARY SOURCES**

Wright & Miller, 4A Fed. Prac. & Proc. Civ. § 1070 (4th ed.)...............................7

Wright & Miller, 12 Fed. Prac. & Proc. Civ. § 2983 (3d ed.) ......................6, 12, 15

Plaintiffs ask this Court to appoint a federal equity receiver because they are unsatisfied with the Oklahoma state court process for receivership appointments. The Court should refuse this brazen attempt to undermine states' rights by interfering with ongoing state litigation. This Court has no jurisdiction to appoint a receiver over property that's already in state court receivership. Even if it did have jurisdiction, it shouldn't use it. Appointing a federal equity receiver would interfere with lenders who are already pursuing more targeted remedies over the same properties—lenders who haven't even been joined as parties here. It would waste precious estate assets on receivership fees. And all of this at the behest of an unsecured creditor with no property rights or equitable claims that would justify this type of equitable relief to begin with. The Court, thus, should deny Plaintiffs' Motion for Appointment of a Federal Equity Receiver.

## BACKGROUND

### *Upperman and Kulick's property empire*

John Upperman and Marc Kulick have been business partners since 2017. Dkt. 2 ¶ 17. Together with Josef Loeffler, they created the Vesta enterprise, which controlled 34 multifamily properties across Oklahoma, Arkansas, and Kansas. *Id.* ¶¶ 12, 17; Dkt. 6 Ex. A. Every property in the Vesta portfolio is owned by a separate LLC (the "property-level entities"), which were, for most of their existence, controlled by Kulick. Dkt. 6 ¶ 12.

Each property is subject to at least one, and often multiple, secured mortgages, in addition to mechanic's and materialmen's liens. *See, e.g.*, Pet. for Breach of

1

Promissory Note & Foreclosure of Mortg., ¶ 26, *FNMA v. Bartlesville Best Living, LLC*, No. CJ-2026-88 (Wash. Cnty., Okla. Mar. 17, 2026). The Federal National Mortgage Association ("FNMA" or "Fannie Mae") owns several of those mortgages. *See* Dkt. 6 Ex. A. YSA owns second mortgages over several properties. Post-Trial Memo. Op. at 32, *Kulick v. YSA Invs. 1, LLC*, No. 2025-1319-KSJM (Del. Ch. June 9, 2026).

Upperman is deeply involved in the Vesta enterprise. He holds a substantial interest (29.05%) in Vesta Capital; invested almost $1.4 million of personal capital across multiple Vesta deals; and loaned Vesta Holdings around $2.5 million. Dkt. 2 ¶ 11. Upperman and Kulick also signed as personal guarantors on "almost every property-level loan in the portfolio." *Id.*; Dkt. 6 ¶ 11.

Upperman has known about Kulick's shady business practices for a long time. In January 2018, Upperman and Loeffler discovered Kulick had used $200,000 of company funds for personal expenses. Dkt. 2 ¶ 31. They were so concerned they required Kulick to hire an independent controller to monitor the finances. *Id.* Then, Upperman, by his own account, became "increasingly concerned" about Kulick in 2023 because Vesta began to distribute payments with decreasing frequency. *Id.* ¶ 22. Despite these concerns, Upperman began lending money to Vesta Holdings in 2024. *Id.* ¶ 23. Certainly, Upperman knew at least as early as March 2026 that Kulick had been engaged in fraudulent behavior when Fannie Mae filed its foreclosure actions. *Id.* ¶¶ 24–25.

*State court litigation*

In March 2026, Fannie Mae sued in various state courts, seeking to foreclose on their mortgages. *See* Dkt. 6, Ex. A. Other lenders have similarly filed foreclosure actions in state court. *See id.*[1] These lenders have requested that the state courts appoint receivers over the properties. *See id.* Several state courts have granted those motions and appointed receivers. *See id.* In at least some of those cases, Kulick has appealed and posted an appeal bond, suspending the receiver's authority while the appeal is pending under Oklahoma law. *See* 12 O.S. § 993(C) (suspending authority of the receiver upon filing of an appeal bond by a party appealing the receivership).

In November 2025, Kulick sued YSA in Delaware Court of Chancery, seeking an order removing YSA's second mortgages. Following a trial, on June 9, 2026, the Chancery Court entered judgment for YSA, finding that its loan agreements gave YSA the right to pursue any remedies necessary to secure their interest, including by recording second mortgages. Post-Trial Memo. Op. at 32, *Kulick v. YSA Invs. 1, LLC*, No. 2025-1319-KSJM (Del. Ch. June 9, 2026). After the Delaware court affirmed YSA's broad authority to secure its interest, YSA began recording special

---

[1] Several lenders have filed lawsuits since Plaintiffs' Exhibit A to their Motion for Appointment of a Receiver was filed, including, among others: *The Bancorp Bank v. Muntage Best Living, LLC*, No. CJ-2026-5195 (Okla. Cnty., Okla.) (foreclosure action filed June 25, 2026); *Axonic Multifamily Bridge SPV (BC) Tr. v. Riverpark Best Living, LLC*, No. CJ-2026-2741 (Tulsa Cnty., Okla.) (foreclosure action filed June 17, 2026); and *Term Fund III MRA Seller LLC v. Montgomery Best Living, LLC*, No. CJ-2026-5022 (Okla. Cnty., Okla.) (foreclosure action filed June 12, 2026).

3

warranty deeds in lieu of foreclosure over the properties, conveying them from the property-level entities to YSA.[2]

***This lawsuit***

On June 25, 2026, a mere two and a half weeks after the Chancery Court's ruling in favor of YSA, Upperman filed this suit. Dkt. 2 (Verified Complaint). Upperman and seven entities he controls sued Kulick, Vesta Realty, Vesta Holdings, Louis Investments, and Asset Holder. They did not sue, or put on notice, the various lenders with a secured interest in the properties at issue.[3] Plaintiffs bring eight claims: (I) civil RICO, (II) conversion, (III) breach of fiduciary duty, (IV) accounting, (V) constructive trust, (VI) fraud, (VII) fraudulent inducement, and (VIII) appointment of a receiver. The sole hook for federal jurisdiction is Plaintiffs' civil RICO claim, which is the only federal claim. Dkt. 2 ¶ 6.

The same day Plaintiffs filed their Verified Complaint, they also filed a Motion for Appointment of a Federal Equity Receiver, requesting that the Court exercise its equitable powers to appoint a receiver over Vesta Realty, Vesta Holdings, Louis Investments, Asset Holder, and the property-level entities. Dkt. 6 at 2. Plaintiffs urged relief on an extremely expedited schedule, filing an *ex parte* request for an expedited hearing on their Motion on the basis that it was an "emergency,"

---

[2] Copies of these Special Warranty deeds are available upon request.

[3] This stands in stark contrast to the state lawsuits, in which secured lenders seeking receivers named as defendants all entities believed to have "some right, title, or interest" in the properties. *See, e.g.*, Pet. for Breach of Promissory Note & Foreclosure of Mortg., ¶ 39, *FNMA v. Bartlesville Best Living, LLC*, No. CJ-2026-88 (Wash. Cnty., Okla. Mar. 17, 2026).

justifying "immediate judicial intervention without advance notice to Defendants"—or, for that matter, to all the non-party lenders who were unaware of the lawsuit or the motion to appoint receiver. Dkt. 7 at 1–2.

Plaintiffs are not shy about why they are seeking a federal receivership: because they do not like Oklahoma's legal process surrounding the appointment of receivers and appeal of that appointment. *See id.* ¶¶ 37, 38 (characterizing Oklahoma's laws as too "borrower-friendly"); *id.* ¶ 40 (justifying their request for a federal receiver because "[a] federal receivership order … would not be subject to these state-law circumvention mechanisms"); *id.* ¶ 65 (disparaging "a patchwork of state court receiverships" as inefficient). Plaintiffs cite three grounds they believe give them a sufficient interest to seek appointment of a receiver: Upperman's risk of loss of his investments, inability to recover on his loans, and exposure under personal guaranties. *Id.* at ¶¶ 41–49.

Plaintiffs ask the Court to appoint a federal equity receiver "possessing the broadest possible powers permitted by law," which would include exercising control over the entire portfolio, directing record turnover, managing day-to-day operations, defending lawsuits, possessing sole authority to commence bankruptcy proceedings, and investigating Kulick. *Id.* ¶ 66. Plaintiffs would include a "lender carveout," allowing senior lenders to preserve their rights. *Id.*

Plaintiffs also request an injunction against the ongoing state-court litigation to effectuate the receivership. Specifically, they ask the Court to "enter an 'automatic stay'-style provision enjoining the commencement or continuation of litigation

5

against the Receivership Entities or their property, subject to appropriate exceptions for lender remedies." *Id.* ¶ 67.

YSA moved to intervene, to protect its substantial interests in the properties. Dkt. 24. This Court granted YSA's motion to intervene on July 10, 2026. Dkt. 42.

## ARGUMENT AND AUTHORITIES

The appointment of a federal equity receiver is an extraordinary equitable remedy, which courts use only in the last instance to avoid imminent harm to property where other legal or equitable remedies are inadequate. Wright & Miller, 12 Fed. Prac. & Proc. Civ. § 2983 (3d ed.). The decision whether to appoint a federal equity receiver is governed by federal law. *Inland Empire Ins. Co. v. Freed*, 239 F.2d 289, 292 (10th Cir. 1956).

This Court should not appoint a receiver for four reasons. Any of these four reasons, standing alone, suffices to prevent the appointment. *First*, and crucially, the Court lacks jurisdiction to appoint a receiver under the "prior exclusive jurisdiction" rule because state courts have already appointed receivers over the same property. *Second*, even if the Court finds it has jurisdiction, it should not exercise that jurisdiction to conflict with ongoing state court litigation under the *Younger* abstention doctrine and the Anti-Injunction Act. *Third*, Plaintiffs have not met the requirements for seeking a federal equity receiver: they have no property rights to protect and they do not make equitable claims justifying appointment of a receiver. *Fourth*, the circumstances counsel strongly against appointing a receiver

here, where adequate legal and equitable remedies to protect the property are underway and appointing a receiver would do more harm than good.

### I.    This Court lacks jurisdiction to appoint a receiver under the "prior exclusive jurisdiction" doctrine.

Under the "prior exclusive jurisdiction" doctrine, "when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*." *Marshall v. Marshall*, 547 U.S. 293, 311 (2006); *see* Wright & Miller, 4A Fed. Prac. & Proc. Civ. § 1070 (4th ed.). This doctrine "avoid[s] unseemly and disastrous conflicts in the administration of our dual judicial system" and "protect[s] the judicial processes of the court first assuming jurisdiction," by mandating that "the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other." *Penn Gen. Cas. Co. v. Pennsylvania ex rel. Schnader*, 294 U.S. 189, 195 (1935) (citations omitted).

Under this doctrine, when a state court appoints a receiver over property, other courts cannot appoint a receiver over the same property. *See id.* (prior exclusive jurisdiction rule applies to "suits in equity for … receivership"); *Superior Oil Corp. v. Matlock*, 47 F.2d 993, 995 (10th Cir. 1931) ("It is of course well settled that if the state court had jurisdiction, its receiver is entitled to retain the possession and control of the properties, and the order of the United States court appointing a receiver is erroneous."). This Court, for instance, has held that once a state court has appointed a receiver, "pursuant to the prior exclusive jurisdiction doctrine, this Court is precluded from taking action that would result in the exercise of *in rem*

jurisdiction" over that receivership property. *Skycam, LLC v. Bennett*, 2014 WL 347064, at *5 (N.D. Okla. Jan. 30, 2014) (Frizzell, J.).

Here, several state courts have appointed receivers over the same properties over which Plaintiffs seek a federal equity receiver. Plaintiffs do not dispute that state courts have already appointed receivers. Indeed, they cite this as they very reason they are asking for a federal receiver: because they don't trust the state court process for appointing a receiver to do a good enough job. *See, e.g.*, Dkt. 6 ¶ 37 (expressing frustration with "borrower-friendly procedural mechanisms under Oklahoma law"). Regardless of what Plaintiffs think of Oklahoma law, Oklahoma state courts have exercised *in rem* jurisdiction over those properties, and this Court is precluded from doing the same. *Marshall*, 547 U.S. at 311. The Court should deny Plaintiffs' request for appointment of a federal equity receiver because it lacks jurisdiction to grant that relief.

## II.    Federal law prohibits this Court from appointing a receiver because doing so would interfere with ongoing state cases.

As a general matter, principles of comity and federalism dictate that a federal court should not interfere with state courts or state law. *Younger v. Harris*, 401 U.S. 37, 44 (1971). By appointing a receiver—and issuing the requested injunction necessary to allow the receiver to exercise his functions—this Court would improperly interfere with ongoing state court proceedings. Such appointment would violate two doctrines in particular: *Younger* abstention and the Anti-Injunction Act.

**A.** **Younger** *abstention counsels that this Court should abstain from appointing a federal receiver.*

The doctrine of *Younger* abstention prohibits federal courts from interfering with ongoing state judicial proceedings that implicate important state interests, so long as the moving party has an adequate opportunity to raise his arguments in state court. *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *Younger*, 401 U.S. at 44. Among the interests justifying *Younger* abstention are the States' "important interests in administering certain aspects of their judicial systems." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 12–13 (1987); *see also Juidice v. Vail*, 430 U.S. 327, 335 (1977) ("A State's interest in the contempt process, through which it vindicates the regular operation of its judicial system … is surely an important interest.").

*Younger* abstention thus applies to state proceedings appointing a receiver. *See Lebbos v. Judges of the Superior Ct.*, 883 F.2d 810, 815 (9th Cir. 1989); *Freedman, Levy, Kroll & Simonds v. Mendelson*, 11 F. App'x 288, 290 (4th Cir. 2001); *Steffens v. Steffens*, 955 F. Supp. 101, 104–05 (D. Colo. 1997). A state court receiver is an officer of the court, whose powers are granted by court order, and who acts under the direction of the court. *See In re O K Inv. Corp.*, 560 P.2d 969, 970 (Okla. 1977) (citation omitted). A federal court interfering with a state court-appointed receiver therefore "challenge[s] … the 'process[] by which the State compels compliance with the judgments of its courts,'" negating that state court's important interest in ensuring "that its orders and judgments are not rendered nugatory." *Lebbos*, 883

9

F.2d at 815 (first quoting *Pennzoil*, 481 U.S. at 13–14, then quoting *Juidice*, 430 U.S. at 336 n.12).

Here, there are ongoing state judicial proceedings that implicate important state interests. Several state courts are in the process of considering ongoing foreclosure actions against property-level entities. *See infra* at 3 & n.1. Appointment of a federal equity receiver would interfere with important state interests in those proceedings by vying for jurisdiction with the state court receivers over the same property. *See Steffens*, 955 F. Supp. at 104–05 (holding that "appointing a receiver to take possession of the [property] and sell it under this Court's (rather than the state's) supervision clearly would frustrate the whole purpose of *Younger* abstention").

Moreover, Plaintiffs had adequate opportunity to raise their arguments in those state proceedings but chose not to. Plaintiffs "need be accorded only an opportunity to fairly pursue their … claims in the ongoing state proceedings, and their failure to avail themselves of such opportunities does not mean that the state procedures were inadequate." *Juidice*, 430 U.S. at 337 (citation omitted). Because Plaintiffs "had a substantial stake in the state proceedings" and "their interests and those of [several of the state court parties] were intertwined," *Younger* bars them from interfering with those proceedings, regardless of whether they were a party to them, "[a]bsent a clear showing" that Plaintiffs could not have made their arguments in the state proceedings. *Hicks v. Miranda*, 422 U.S. 332, 348–49 (1975). Plaintiffs have not made that clear showing.

Indeed, Plaintiffs' arguments about Kulick's waste of the properties were raised in state court by other lenders and acted upon by the state courts, who appointed receivers over the properties. Plaintiffs simply dislike how those appointments function under state law and now seek a federal receiver to override state procedure. Contrary to what Plaintiffs believe, "judicial efficiency" does not justify disturbing the balance of powers between federal and state courts. *See* Dkt. 6 ¶ 65. The Court should reject this flagrant attempt subvert state law and abstain from interfering with the state court receiverships under *Younger*.

### B.    *The Anti-Injunction Act prohibits this Court from enjoining ongoing state court proceedings.*

The Anti-Injunction Act prohibits a federal court from "grant[ing] an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "Thus, the Anti-Injunction Act generally prohibits federal courts from enjoining state-court suits." *Quint v. Vail Resorts, Inc.*, 89 F.4th 803, 810 (10th Cir. 2023) (quotation marks and citation omitted).

As part of their request for the Court to appoint a receiver, Plaintiffs ask the Court to enjoin the "commencement or continuation of litigation against the Receivership Entities or their property." Dkt. 6 ¶ 67. This would entail enjoining all the ongoing state lawsuits that involve the property-level entities. *See infra* at 3 & n.1. By its plain text, the Anti-Injunction Act prohibits that. *See* 28 U.S.C. § 2283; *Freedman, Levy*, 11 F. App'x at 290 (holding that Anti-Injunction Act bars federal suit seeking to enjoin order relating to state court receivership). The relief Plaintiff

11

requests is thus barred by federal statute, in addition to principles of comity and federalism. This Court cannot grant such relief.

### III.   Plaintiffs have no right to request a receiver.

To seek a receiver, the moving party must have a legally recognized property interest and must request the receiver to support an equitable claim that requires preservation of the property. *Kelleam v. Md. Cas. Co. of Baltimore*, 312 U.S. 377, 381 (1941); Wright & Miller, 12 Fed. Prac. & Proc. Civ. § 2983 (3d ed.). Plaintiffs meet neither of these requirements.

#### A. Plaintiffs have no property rights that would justify the appointment of a receiver.

In order to appoint a federal equity receiver, the court must be satisfied that the party seeking receivership has "some legally recognized right in that property that amounts to more than a mere claim against defendant." Wright & Miller, 12 Fed. Prac. & Proc. Civ. § 2983 (3d ed.). This makes sense because a receivership "may interfere seriously with defendant's property rights by ousting him or her from control, and sometimes even possession" of the property—so is improperly sought by a party with no right in the property themselves. *Id.*

On this basis, a federal court will not appoint a receiver at the request of an unsecured creditor, because unsecured creditors lack property rights. *See Inland Empire Ins. Co.*, 239 F.2d at 292 (holding that federal courts will "withhold federal equity jurisdiction to appoint a receiver on petition of an unsecured creditor" because receivership is "a remedy not available in federal court until after the establishment of the creditor's legal right in the property of the debtor" (citing

*Pusey & Jones Co. v. Hanssen*, 261 U.S. 491 (1923)); *see also Kelleam*, 312 U.S. at 381 (holding that appointment of a receiver was an abuse of discretion where the moving party had "no accrued right" for the receiver to enforce).

Plaintiffs have no rights in the properties at issue. Plaintiffs allege three interests they say justify their request for a receiver: Upperman's investment losses, outstanding loans, and exposure to personal guaranties. Dkt. 6 at ¶¶ 41–49. None of these creates a secured interest in property. An investor or a personal guarantor does not have a legally cognizable interest in property: he is merely an "unsecured simple contract creditor," who has "no substantive right, legal or equitable, in or to the property of his debtor." *Pusey & Jones Co.*, 261 U.S. at 497.[4] And a creditor has an interest in property only if his loan is secured, which Upperman's loans appear not to be: the Promissory Note appended to Plaintiffs' Motion for Appointment of a Federal Equity Receiver does not identify any property securing the loan. *See* Dkt. 6, Ex. K.

Without a recognized interest in property, Plaintiffs have no right to request that the Court appoint a receiver over that property.

---

[4] To the extent Kulick's wrongful conduct is causing lenders to sue Upperman to recover on Upperman's personal guarantees, Dkt. 6 ¶¶ 46–49, Upperman may have legal recourse against Kulick personally—but that does not grant him a property interest.

13

### B. *Plaintiffs improperly seek a receiver as a standalone conservatory measure, unmoored from any equitable claims seeking to dispose of the property.*

A federal court will not appoint a receiver unless that appointment is "a remedy auxiliary to some primary relief which is sought and which equity may appropriately grant." *Kelleam*, 312 U.S. at 381. A federal equity receivership "is not an end in itself": it "is only a means to reach some legitimate end sought through the exercise of the power of a court of equity." *Gordon v. Washington*, 295 U.S. 30, 37 (1935). The purpose of a receivership is "to preserve and protect the property pending its final disposition" by the court, so "there is no occasion for a court of equity to appoint a receiver of property of which it is asked to make no further disposition." *Id.*

Plaintiffs cannot meet this requirement. Of their claims, only two—Count IV accounting and Count V constructive trust—sound in equity. The rest, including the RICO claim which alone gives this Court jurisdiction, are legal claims for money damages. Plaintiffs' own allegations confirm they do not seek a receiver to supervise an accounting or administer a constructive trust, but rather to "stabilize operations, preserve assets, [and] prevent further dissipation," Dkt. 6 ¶ 64, so they do not lose their investments, *id.* ¶¶ 42, 45. Their requested receivership is thus considerably broader than the equitable claims it would supposedly support. Plaintiffs are seeking a receivership to preserve assets they wish to recover later as money damages, through their RICO claim and otherwise, which is not a "legitimate end sought through the exercise of the power of a court of equity." *Gordon*, 295 U.S. at 37. Plaintiffs' request should be denied on this basis.

**IV.    Even if the Court could appoint a receiver, it should not do so.**

Appointing a receiver is a "delicate" remedy which "should be exerted sparingly," "because perversion or abuse may work great hardship." *Skirvin v. Mesta*, 141 F.2d 668, 673 (10th Cir. 1944). Certainly, before taking the extreme step of appointing a receiver, the court will consider the adequacy of other remedies, whether the property is in imminent danger of being lost, whether appointment of a receiver would do more harm than good, and whether the moving party's interests would actually be served by receivership—in addition to the risk to the property, the defendant's fraudulent conduct, and the risk of irreparable injury to the moving party. *Fleet Bus. Credit, L.L.C. v. Wings Rests., Inc.*, 291 B.R. 550, 556 (N.D. Okla. 2003). The totality of the circumstances here counsel strongly against appointing a receiver.

### A.    There are adequate, less drastic remedies to safeguard the properties.

Courts will appoint a federal equity receiver only as a drastic remedy of last resort. *See* Wright & Miller, 12 Fed. Prac. & Proc. Civ. § 2983 n.12 (3d ed.) (describing appointment of a receiver as "a drastic remedy usually imposed only when no lesser relief will be effective"); *Am. Bank & Tr. Co. v. Bond Int'l Ltd.*, 2006 WL 2385309, at *8 (N.D. Okla. Aug. 17, 2006) (courts consider whether legal remedies are inadequate or whether there is a "less drastic equitable remedy" in deciding whether to appoint a receiver).

Here, lenders are already using foreclosure, guaranty enforcement, contract claims, and state-law receivership mechanisms to protect the properties. Lenders

15

have filed foreclosure actions in state court and have been granted receivers over several properties—which they will soon be defending on appeal. *See infra* at 3 & n.1. YSA has filed and recorded deeds-in-lieu to transfer properties away from Kulick. These lender-driven remedies are a more fine-tuned instrument than the sweeping appointment of a federal receiver over a large property portfolio. Allowing the parties with the interest in the properties the opportunity to safeguard their own interests, through recognized legal and equitable processes, is a better way to proceed.

### B.  *Plaintiffs overstate the imminent danger to the properties.*

The properties are being systematically transferred out of Kulick's control, undermining Plaintiffs' argument that Kulick will continue to waste them. YSA's deeds-in-lieu transfer the assets out of the property-level entities into YSA's control. Kulick's control over the properties is thus hardly "unchecked," Dkt. 6 ¶¶ 5–6—it is in the process of being checked by deeds-in-lieu, in addition to foreclosure actions and state-court-appointed receivers. Plaintiffs overstate the imminent danger to the properties and thus the urgency of appointing a receiver and the risk of irreparable harm.

### C.  *Appointing a receiver would do more harm than good.*

Appointing a federal receiver is a blunt instrument that comes with significant negative side-effects—and would not even achieve the purpose Plaintiffs want it for.

*First*, federal receiverships are notoriously expensive and administratively burdensome. *See Gordon*, 295 U.S. at 39 (describing the "burdensome expense" of a federal receiver). Receiver fees, professional fees, and ongoing reporting

obligations can significantly drain an estate's value long before any purported stabilization benefit materializes[5]—a particularly acute concern here, where parallel receiverships are already positioned to administer the same property under state law.

*Second*, appointing a competing federal receiver would create exactly the kind of destructive conflict between concurrent state and federal jurisdiction that courts have long sought to avoid. "One of the great virtues of federal equity jurisdiction is the facility with which it may be exercised or withheld in the public interest. It is usually withheld to avoid unseemly conflicts between state and federal concurrent jurisdictions." *Inland Empire Ins. Co.*, 239 F.2d at 292. Appointing a receiver here would create precisely that unseemly conflict.

*Third*, the practical benefits of the receivership Plaintiffs seek are minimal at best. Upsetting existing efforts to control the properties by appointing a receiver would create uncertainty for tenants, lenders, and investors, which could, at least initially, accelerate the erosion of asset value rather than prevent it. And a federal

---

[5] Plaintiffs' suggested receiver, Matthew D. Mason, appears typically to charge over $600/hour, or a large set fee per month, in addition to hourly fees for his team's time and a percentage of each new lease and/or of property sales. *See, e.g.*, Order Appointing Receiver, *RSS CSMC2021 v. Adventus US Realty #4 LP*, No. 1:23-cv-08231, at 12 (S.D.N.Y. Sept. 22, 2023) ($650/hour, 0.5% of new leases, 0.25% of lease renewals, and 0.25% of gross sale price); Agreed Order Granting Pl.'s Ex Parte Mot. for Appointment of Receiver, *U.S. Bank Nat'l Ass'n v. Kimble Dev. La., LLC*, No. 20-01315, at 6 (W.D. La. Nov. 24, 2020) ($610/hour and reasonable compensation for managing agent); Order Appointing Receiver, *Wells Fargo Bank v. 181 W. Madison Property LLC*, No. 1:26-cv-3416, at 3 (N.D. Ill. Apr. 24, 2026) (greater of 1% of gross revenue or $25,000 per month, and 0.25% of the gross sale price of property).

receivership would not even serve Plaintiffs' own stated interests: were the receiver to liquidate the properties now, Plaintiffs—situated far down the priority list of creditors and investors—would likely recover little or nothing. In other words, Plaintiffs seek a remedy that would harm virtually everyone involved, including Plaintiffs themselves, for very little corresponding benefit.

### D. Equitable principles disfavor granting an equitable remedy.

The appointment of a receiver is an equitable remedy, *Kelleam*, 312 U.S. at 381, and is therefore subject to equitable defenses, including the doctrines of unclean hands, laches, and "equity follows the law." All three doctrines bar this suit.

*First*, Plaintiffs come to this court with unclean hands. *See CGC Holding Co. v. Hutchens*, 974 F.3d 1201, 1214 (10th Cir. 2020) ("The unclean hands doctrine means, in general, that equity will not aid a party whose conduct has been unlawful, unconscionable, or inequitable."). Upperman is Kulick's business partner and, by his own account, a "sophisticated real estate investor." Dkt. 6 ¶ 11. At the very least, without engaging in further discovery, the record shows that he knew Kulick was siphoning company funds for personal expenses as early as 2018; grew suspicious of Kulick reducing distributions in 2023; and knew of actionable fraud by March 2026. Dkt. 2 ¶¶ 22, 24–25, 31. Having accepted the benefits of Kulick's shady investment strategies while the Vesta empire thrived, Upperman cannot now come to a court of equity when those same investments take a turn for the worse.

*Second*, Plaintiffs have slept on their rights. *Lane & Bodley Co. v. Locke*, 150 U.S. 193, 201 (1893). Despite knowing of the fraud for months, if not years, Plaintiffs waited to sue until June 25, 2026, shortly after YSA prevailed in Delaware on June

18

9. If the need for a receivership is truly as great as Plaintiffs contend, they would have filed suit immediately upon discovering the risks to the properties, rather than waiting. Tellingly, the Motion spends much of its energy attacking YSA over that "contentious litigation" and claiming the Delaware ruling "multiplied" "the risks to the entire portfolio." Dkt. 6 ¶¶ 23, 25–26. The timing is no coincidence, then: it appears Plaintiffs waited for the Delaware outcome and sued when it did not turn out how they hoped. That delay prejudiced YSA, which spent significant time and resources litigating in Delaware and recording deeds-in-lieu to protect the properties, only now to face a federal receiver that could override those remedies. *See Biodiversity Conservation All. v. Jiron*, 762 F.3d 1036, 1091 (10th Cir. 2014) (equity will not assist those whose lack of diligence caused prejudicial delay).

*Third*, this suit also violates the principle that equity follows the law by seeking to subvert the legally recognized priority of secured creditors over unsecured creditors. *See Hedges v. Dixon Cnty.*, 150 U.S. 182, 192 (1893) ("[W]herever the rights or the situation of parties are clearly defined and established by law, equity has no power to change or unsettle those rights or that situation." (citation omitted)). Plaintiffs ask this Court to appoint a receiver and declare a constructive trust over the properties for their benefit, despite the fact that several creditors have secured interests in those properties, and Plaintiffs do not. Dkt. 2 ¶ 115. In doing so, they seek to elevate their unsecured rights over the rights of secured creditors—an outcome equity will not tolerate.

19

### E. *The Court should not rush into such a drastic remedy without requiring notice to all interested parties.*

Finally, courts are rightly reluctant to impose a federal receivership on a rushed or *ex parte* basis, particularly in a complex, multi-stakeholder commercial dispute like this one involving numerous properties, lenders, tenants, and investors, many of whom are not even parties to this action. *See Tenn. Pub. Co. v. Carpenter*, 100 F.2d 728, 731 (6th Cir. 1938) ("It is of course the general rule that appointments of receivers are not made ex parte and without notice."); *Nottebaum v. Leckie*, 31 F.2d 556, 562 (3d Cir. 1929) (holding that appointment of a receiver without notice or an opportunity to be heard was a due process violation); *see also Fed. Home Loan Mortg. Corp. v. Spark Tarrytown, Inc.*, 813 F. Supp. 234, 236 (S.D.N.Y. 1993) ("Lack of notice deprives the owner, or lessee of property, of the opportunity to object to appointment of a receiver or to propose an alternative way of dealing with the situation giving rise to the application.").

At an absolute minimum, before taking any action on the Motion, the Court should require joinder of all parties whose interests would be upended by the appointment of a federal receiver,[6] permit those interested parties a meaningful opportunity to brief their positions, and consider whether any narrower form of

---

[6] Fannie Mae, for instance, just filed a Motion to Intervene on July 17. Dkt. 51. Responses to that Motion to Intervene are not due until July 24—three days *after* the deadline to respond to Plaintiffs' Motion for Appointment of a Federal Equity Receiver. Dkts. 42, 51, 52. There remain numerous other lenders who may not have found out about this lawsuit and so have not had the opportunity to intervene and have their opinions heard. Plaintiffs seek relief at a speed that would cut out lenders with substantial interests in these properties, whose opinions the court should consider before taking any action.

relief might address Plaintiffs' stated concerns without displacing the state court receiverships and lender-driven remedies already in place. *See Fed. Home Loan Mortg. Corp.*, 813 F. Supp. at 236.

## CONCLUSION

Appointment of a receiver here would improperly interfere with the state courts' exercise of *in rem* jurisdiction and would impose a sweeping, extraordinary remedy on a problem already being resolved. This Court lacks jurisdiction to inflict that result—but even if it had jurisdiction, it should decline to exercise its equitable powers to grant such relief. YSA respectfully requests that the Court deny Plaintiffs' Motion for Appointment of a Federal Equity Receiver and grant such other relief as it deems just and proper.

DATED: July 21, 2026

Respectfully submitted,

*/s/ Fenella J. Flanagan*

Andrew J. Hofland, OBA No. 33396
Justin A. Lollman, OBA No. 32051
Fenella J. Flanagan, OBA No. 36387
**HOFLAND/LOLLMAN**
401 S. Boston Ave., Ste. 500
Tulsa, Oklahoma 74103
Telephone:  918.221.7440
Fax:          918.221.7556
*ahofland@hoflandlollman.com*
*jlollman@hoflandlollman.com*
*fflanagan@hoflandlollman.com*

**COUNSEL FOR INTERVENOR
YSA INVESTMENTS 1, LLC**

21

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2026, I electronically filed the foregoing document with the Clerk of Court for the U.S. District Court for the Northern District of Oklahoma using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who are registered CM/ECF users in this case.

I further certify that on July 21, 2026, I served a true and correct copy of the foregoing document on the following parties, who have not yet entered an appearance or are not registered CM/ECF users, by first-class mail:

**MARC KULICK**
14681 S. 82nd E Ave, Apt. 5305
Bixby, OK 74008

**DEFENDANT**

*/s/ Fenella J. Flanagan*
Fenella J. Flanagan