**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| JOHN ALEX UPPERMAN, individually; | ) | |
| ILLINI HOLDINGS, LLC; THRIVE | ) | |
| REAL ESTATE, LLC; WILDWOOD | ) | |
| ASSETS, LLC; TU PROPERTIES, LLC; | ) | |
| OAK STREET; CAPITAL, LLC; and | ) | |
| 12 OAK LENDING, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 26-cv-383-GKF-SH |
| | ) | |
| v. | ) | |
| | ) | |
| MARC KULICK, individually; VESTA | ) | |
| REALTY, LLC; VESTA HOLDINGS, | ) | |
| LLC; LOUIS INVESTMENTS, LLC; | ) | |
| and ASSET HOLDER, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS VESTA REALTY, LLC, VESTA HOLDINGS, LLC, AND ASSET HOLDER, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR APPOINTMENT OF A FEDERAL EQUITY RECEIVER**

Defendants Vesta Realty, LLC; Vesta Holdings, LLC; and Asset Holder, LLC (collectively, "Defendants")[1] hereby respond in opposition to *Plaintiffs' Motion for Appointment of a Federal Equity Receiver* [Dkt. 6] ("FER Motion"). In opposition, Defendants state as follows:

**INTRODUCTION**

Within the vast universe of entities, assets, owners and investors affected by this litigation, Plaintiffs serve only as fractional investors with *de minimus*, minority interests in fewer than half of the 34 Property Entities at issue in this case.[2] Plaintiffs own only approximately **0.7%** total of

---

[1] Defendant Louis Investments, LLC ("Louis Investments") filed its Suggestion of Bankruptcy [Dkt. 39] herein on July 10, 2026. Defendant Marc Kulick has not yet been served.

[2] Combined, Plaintiffs have the following minority equity interest in the following **16** Property Entities assets: 0.5% of 23 East; 0.67% of 727 Lofts/Class; 2.79% of Barcelona; 0.72% of Briarwood-Fairfax; 0.73% of Copperfield; 0.34% of Lexington; 1.9% of Muntage; 0.55% of

only 16 of the more than 30 Property Entities by virtue of their capital investments.[3]   Plaintiffs concede their total investment is only approximately $1,369,488 of the total alleged value of the affected properties in this litigation of over $925,000,000.00, representing more than 9,600 residential units.[4]

However, in spite of (1) Plaintiffs' *de minimus* investor status with only fractional ownership interest, and (2) the multitude of legal remedies available to, and already pled, by Plaintiffs,[5] they have not only sought the extraordinary remedy of a federal equity receiver ("FER") under Federal Rule 66, they have also demanded the FER be empowered with astonishingly broad and comprehensive control over each and every Property Entity in this case, including governance over 18 entities in which Plaintiffs have *zero* ownership interest, thereby directly affecting property interests of multiple owners of each Property Entity—as well as hundreds of other investors and employees—overriding dozens of operating agreements, and rewriting the entire universe of corporate governance within and among the more than 30 Property Entities.[6]

---

OKC3 Investors; 0.44% of One Eaton; 1.0% of Riverpark; 0.33% of Shoreline; 0.39% of Jenks; 0.90% of Woodland Manor; and 0.37% of Woodscape.

[3] [Dkt. 2 at ¶ 11] ("Through his controlled entities – Plaintiffs Illini Holdings, LLC; Thrive Real Estate, LLC; Wildwood Assets, LLC; TU Properties, LLC; and Oak Street Capital, LLC, Upperman invested approximately $1,369,488").

[4] [Dkt. 6 at ¶ 11] ("Upperman is a sophisticated real estate investor who invested approximately $1,369,488 across multiple Vesta deals. . . ."); [Dkt. 6 at ¶ 5] ("comprising more than 30 projects and over 9,600 residential units representing a combined value historically exceeding $925 million").

[5] Legal remedies found in Plaintiffs' Complaint [Dkt. 2], *Prayer for Relief*: RICO damages, Conversion damages, damages for Breach of Fiduciary Duty, funds to be held in Constructive Trust, and punitive damages for Fraud.

[6] Plaintiffs' Complaint [Dkt. 2 at ¶ 136]: "The receiver should be empowered to: (a) take control of all books, records, bank accounts, accounting systems, and property-management operations; (b) collect rents and revenues; (c) pay necessary operating expenses including debt service and

Notably, *none* of the Property Entities are even parties to this case. Plaintiffs acknowledge they are unable to remove Louis Investments as the manager of the Property Entities pursuant to the operating agreements.[7] So, they ask the Court to step in to remove the manager and appoint an FER where there is no contractual remedy for such request. Plaintiffs instead are worried about their own minimal investment interests and personal guaranties. In fact, out of the multitude of investors in these properties—including those with majority ownership and significantly larger equity investments—*none of them* have moved for the appointment of an FER to protect *their* interests, let alone demanded a drastic all-powerful FER to assume total control over *everyone's* property.

Nevertheless, as the following brief demonstrates, the Court should deny Plaintiffs' FER Motion because, *inter alia*, Plaintiffs have sought an extraordinary and disproportionately sweeping equitable remedy in a case where Plaintiffs have legal remedies already available, and Plaintiffs have failed to demonstrate the requisite "clear necessity" to protect Plaintiffs' minority ownership interests in fewer than half of the more than 30 Property Entities (none of which are parties hereto) to be governed by the proposed FER.

## ARGUMENT AND AUTHORITIES

### I. This Case should be stayed due to the Bankruptcy of Louis Investments.

---

utilities; (d) preserve, maintain, and where appropriate improve properties; (e) investigate intercompany transfers and trace diverted funds; (f) employ professionals; (g) communicate with lenders, vendors, investors, and regulators; (h) market and sell portfolio properties in value-maximizing transactions; (i) defend or resolve pending foreclosure actions; (j) report to this Court; and (k) seek further authority as needed."

[7] [Dkt. 6 at ¶ 12] ("The operating agreements for the property-level LLCs create nearly insurmountable hurdles to removing Louis Investments as Manager, or otherwise restricting Kulick's conduct.")

Plaintiffs' Complaint and the FER Motion describe Louis Investments as the entity that manages and controls the more than 30 Property Entities over which Plaintiffs ask the Court to appoint a FER.[8]    Accordingly, Louis Investments' bankruptcy filing and the automatic stay associated therewith should stay these proceedings.[9]    Section 362(a)(3) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."    Section 362(a) applies to "all entities," not merely creditors.    The stay protects estate property broadly, including intangible rights, contract rights, control rights, causes of action, and disputed or arguable interests.

The automatic stay protects estate property and prohibits acts to obtain possession of, exercise control over, or interfere with estate property, whether the act is styled as a lawsuit against the debtor or as a lawsuit against a third party holding, servicing, processing, or controlling estate property or estate-related rights.    Louis Investments' role as the upstream manager gives it rights, powers, duties, claims, defenses, and economic and operational interests connected to the Property Entities. Those interests include, without limitation, direct or indirect management rights, governance rights, control rights, contract rights, rights to direct or preserve management, records and information rights, causes of action, defenses, claims to protect the property structure, claims to prevent unauthorized transfers or control changes, and reorganization value. These legal and equitable interests are property of Louis Investments' bankruptcy estate under 11 U.S.C. § 541. Because the Property Entities' claims and defenses directly affect those estate interests, those

---

[8] Dkt. 2 at ¶¶ 14, 28, 80, 83; Dkt. 6 at ¶¶ 5, 12, 15.

[9] *See* Dkt. 39 and 11 U.S.C.A. § 362.

claims and defenses are at minimum related to the Louis Investments chapter 11 case and to the other pending Property Entities bankruptcy cases.[10]

In this case, Plaintiffs seek to interfere with bankruptcy debtor Louis Investments' direct or indirect management rights, governance rights, control rights, contract rights, rights to direct or preserve management, records and information rights, causes of action, defenses, claims to protect the property structure, claims to prevent unauthorized transfers or control changes, and reorganization value, all of which are protected in the bankruptcy. In other words, allowing the FER Motion to move forward would violate the automatic stay and impermissibly intrude on the bankruptcy court's exclusive jurisdiction over Louis Investments.

II. **The appointment of an Equitable Receiver is an extraordinary remedy within the sole discretion of the Court and requires a showing of clear necessity to protect Plaintiffs' interest in the Subject Property.**

A. <u>**An overview of Federal Equity Receivers: Appointment is governed by Federal law and is within the sole discretion of the Court.**</u>

In this case, Plaintiffs have no contractual right to the appointment of a receiver. Instead, Plaintiffs rely on Fed. R. Civ. P. 66 for their request for the appointment of an FER, which states:

> These rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued. But the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule. An action in which a receiver has been appointed may be dismissed only by court order.

The Court must therefore look to precedential case law to determine whether the appointment of an FER is appropriate in this case.

"Federal equity receivers are non-governmental employees [pursuant to 28 U.S.C. § 958], often appointed pursuant to the court's inherent equitable powers, at the behest of private parties,

---

[10] Discussed in more detail in Section II.B below.

to protect purely private interests by preserving property pending judgment." *U.S. v. Quintana-Aguayo*, 235 F.3d 682, 686 (1st Cir. 2000) (citations omitted). The decision whether to appoint a receiver "rests in the sound judicial discretion" of the court. *Atl. Trust Co. v. Chapman*, 208 U.S. 360, 377, 28 S. Ct. 406, 52 L. Ed. 528 (1908).

Nevertheless, appointment of a receiver is "an ***extraordinary*** equitable remedy [a]nd equity intervenes only when there is no remedy at law or the remedy is inadequate." *U.S. v. Bradley*, 644 F.3d 1213, 1310 (11th Cir. 2011) (emphasis added). Congress has specifically provided that a Federal Equity Receiver, once appointed, is to manage and operate the property according to the laws of the state where the property is located.[11] However, the appointment is to be measured by federal standards. *Midwest Sav. Ass'n v. Riversbend Assocs. P'ship*, 724 F. Supp. 661 (D. Minn. 1989).

**B.** **A Federal Equitable Receiver is an extraordinary remedy that should be employed with utmost caution and granted only in cases of clear necessity.**

Although no relevant case law exists emanating from the Northern District of Oklahoma, federal courts in other jurisdictions are in accord that the appointment of a FER is an extraordinary remedy and should be granted only upon a showing of clear necessity. For example, in *Midwest Sav. Ass'n v. Riversbend Assocs. P'ship*, the United States District Court for the Minnesota Third Division held that under Federal Rule 66, a mortgagee was not entitled to the appointment of a federal equity receiver which "permissibly may be appointed only on a showing of need according to federal standards." 724 F. Supp. 661, 662, (1989). In its analysis, the *Midwest* court referenced 28 U.S.C. § 959(b), observing that:

---

[11]The intent of Federal Rule 66—to apply federal law to the appointment of a receiver—may be gathered from the note of the advisory committee, which states that the final sentence of the Rule was added in 1948 to assure "the application of the federal rules to all matters except actual administration of the receivership estate itself." Fed. R. Civ. P. 66 Advisory Committee's Note.

> [A]ppointment of a Federal Equity Receiver is governed by federal law and that *requires a showing of grounds for such appointment*. The Congress has specifically provided that a Federal Equity Receiver, once appointed, is to manage and operate the property according to the laws of the state where the property is located, but the *appointment* is to be made by federal standards.

*Id*. (emphasis added). The *Midwest* court further noted that "Federal Rule 66 provides that the practice is to be in accordance with past practices in the United States Courts, and by United States District Court Rules.  Federal Courts are not bound by state law in determining whether such an equitable remedy is to be given." *Id*. (citing *Mintzer v. Arthur L. Wright Co.*, 263 F.2d 823 (3d Cir. 1959)).

In concluding that the appointment of a federal equity receiver was not justified in that case, the *Midwest* court analyzed the case law cited in 12 Wright and Miller *Federal Practice and Procedure*, Civil, Sections 2981, 2982 and 2983, summarizing that:

> This source counsels that the appointment of a Federal Equity Receiver is an *extraordinary remedy that should be employed with the utmost caution and granted only in cases of clear necessity to protect a plaintiff's interest in the property*…  Factors that courts have considered relevant to establishing the requisite need for a Federal Equity Receiver include fraudulent conduct on the part of defendant or the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered.

*Id*. (citations omitted) (emphasis added).  The *Midwest* court continued that "the appointment of a receiver is *not a matter of positive right but rather lies in the discretion of the court* which is to be exercised only when the existence of grounds and conditions such as stated above are shown." *Id*. (citation omitted) (emphasis added).  The *Midwest* court then cited the United States Supreme Court decision in *Gordon v. Washington* in which the Court ruled that "... the summary remedy by receivership, with the attendant burdensome expense *should be resorted to only on a plain showing of some threatened loss or injury to the property, which the receivership would avoid*." 295 U.S. 30, 55 S. Ct. 584, 589, 79 L. Ed. 1282 (1935) (emphasis added).

More recently, in denying a plaintiff's motion to reconsider the court's previous denial to appoint a federal equity receiver *by agreement*, the United States District Court of the Northern District of Ohio, observed that:

> [T]he appointment of a federal equity receiver is an 'extraordinary remedy' that a court should employ with the 'utmost caution' and grant 'only in cases of *clear necessity* to protect *plaintiff's* interests in the property.' In its initial motion seeking the appointment of a receiver, Plaintiff did not demonstrate the 'clear necessity' for the Court to undertake this '*extraordinary remedy*.' Plaintiff offered insufficient facts in an unpersuasive argument.

*Wells Fargo Bank, N.A. v. Finelli*, 2006 WL 3085649, p. 2 (citations omitted) (emphasis added). The plaintiff in *Finelli* had requested a federal equity receiver because the appointment would be "fair, just, equitable and consented to by all parties," but the *Finelli* court ruled that "[t]his bald conclusion is not enough…As a result, Court cannot-and will not-exercise its 'extraordinary' equitable powers to grant Plaintiff's request for this 'extraordinary motion' so unsparingly." *Id*.

The *Finelli* court reasoned that when a complaint "states a cause of action in equity, the summary remedy by receivership, with the attendant burdensome expense, ***should be resorted to only on a plain showing of some threatened loss or injury to the property, which the receivership would avoid***." *Id.* (citation omitted) (emphasis added). The *Finelli* court also referenced a number of factors which a court uses to determine the "clear necessity" of appointing of a federal equity receiver, "including: fraudulent conduct by the defendant; imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; inadequacy of available legal remedies; lack of less drastic equitable remedies; and, likelihood that the appointment will do more good than harm." *Id*. (citations omitted). In the *Finelli* case, the court determined that the plaintiff had failed, *inter alia*, to demonstrate the requisite "imminent danger" of diminution in value, or that plaintiff would be harmed if the court did not employ the "drastic measure" of appointing a

receiver. *Id*.

The FER Motion relies entirely on conclusory allegations in order to distract this Court from Plaintiffs' disproportionate request for relief and the fact that Plaintiff Upperman is concerned about ***his potential personal*** liability associated with the contractual guaranties he freely signed. In this case, Plaintiffs have sought the appointment of an omnipotent FER to assume operations over ***more than 30*** Property Entities, in spite of Plaintiffs' status as fractional investors with a *de minimus* 0.7% average ownership of only 16 of these companies, equaling a relatively small equity investment of around $1.3 million out of $925 million worth of properties containing over 9,600 residential units.  In fact, out of the multitude of investors in these properties—including those with majority ownership and significantly larger equity investments—***none of them*** has moved for the appointment of an FER to protect *their* interests,[12] let alone demanded an extraordinarily all-powerful FER to assume total control over *everyone's* companies and properties.  Among other things, including, without limitation the procedural defect of failing to include the Property Entities as parties herein, this signifies that these investors/owners have not perceived an "imminent danger" of losing their investments (without the appointment of an omnipotent FER) and/or they have ample, adequate legal remedies available.

In addition to Plaintiffs lack of an adequate interest in the subject property in order to seek an FER over all of the Property Entities, there are also thirteen (13) Property Entities in bankruptcy that this Court has no authority over due to the automatic stay and exclusive jurisdiction of the bankruptcy court.[13]  Further, there are three (3) Property Entities that currently have a receiver in

---

[12] *See* Auerbach Opportunity Fund's Emergency Motion to Intervene [Dkt. 57:  Proposed Position on Receivership.

[13] The Property Entities currently in bankruptcy are: 727 Lofts Best Living, LLC (U.S. Bankruptcy Court Northern District of Texas Case No. 26-32779); 727 Lofts Holdings, LLC (U.S. Bankruptcy

place,[14] and three (3) Property Entities whose appointment of receiver decisions are currently pending an appellate decision.[15]  Therefore, Plaintiffs' ownership interest, or lack thereof, aside, this Court has no jurisdiction to appoint an FER over at least 13 of the Property Entities.

Undermining the requisite element of "clear necessity" for the appointment of an FER, and as Plaintiffs' own Complaint clearly indicates, these Plaintiffs have more than adequate legal remedies available, including damages under RICO, damages for conversion, damages for breach of fiduciary duty, a request that funds be held in a constructive trust, and a demand for punitive damages for fraud.  Accordingly, the availability of ample legal remedies alone justifies denial of Plaintiffs' entreated drastic equitable remedy.

---

Court Northern District of Texas Case No. 26-32780); Barcelona Best Living, LLC (U.S. Bankruptcy Court Northern District of Texas Case No. 26-33093); Fairfax Best Living, LLC (U.S. Bankruptcy Court Western District of Oklahoma Case No. 26-11985); Fairfax Investors, LLC (U.S. Bankruptcy Court Western District of Oklahoma Case No. 26-11984); Lofts at North Penn Best Living, LLC (U.S. Bankruptcy Court Northern District of Texas Case No. 26-32920); Remington Ranch's Best Living, LLC (U.S. Bankruptcy Court Northern District of Texas Case No. 26-32804); A-V Village Creek Owner, LLC (U.S. Bankruptcy Court Northern District of Texas Case No. 26-32922); Woodland Oaks Best Living, LLC (U.S. Bankruptcy Court Western District of Oklahoma Case No. 26-11986); Woodland Oaks Investors, LLC (U.S. Bankruptcy Court Western District of Oklahoma Case No. 26-11987); Woodland Manor's Best Living, LLC (U.S. Bankruptcy Court Northern District of Texas Case No. 26-33167); Woodland Manor TIC 1, LLC (U.S. Bankruptcy Court Northern District of Texas Case No. 26-33168); and Ridge Best Living, LLC (U.S. Bankruptcy Court Northern District of Texas Case No. 26-33177).

[14] Canopy Best Living, LLC (Pulaski County Circuit Court, Arkansas – Federal National Mortgage Association v. Canopy Best Living, LLC, et al., Case No. 60CV-26-3320); A-V Classen Owner, LLC (Oklahoma County District Court for State of Oklahoma, Term Fund III mra Seller LLC v. A-V Classen Owner, LLC, et al., Case No. CJ-2026-4901); and Montgomery Best Living, LLC (Collin County Court at Law 3, Texas, Case No. 003-00572-2026).

[15] Drexel Flats Acquisition, LLC/Drexel Flats Acquisition TIC, LLC (Supreme Court of the State of Oklahoma, Case No. 124122), LSREF7 Badlands Loan Trust 2026 v. Drexel Flats Acquisition, LLC, et al.); Bartlesville Best Living, LLC (Supreme Court of the State of Oklahoma, Case No. 124152, Federal National Mortgage Association v. Bartlesville Best Living, LLC, et al.); and One Eton Square, LLC/One Eton TIC 1, LLC (Supreme Court of the State of Oklahoma, Case No. 124110, Federal National Mortgage Association v. One Eton TIC 1, LLC, et al.).

**C.**     **Already an extraordinary remedy in and of itself, Plaintiffs seek the FER to be empowered with astonishingly broad and comprehensive control over each and every non -party Property Entity.**

In *Garden Homes, Inc. v. U.S.*, the First Circuit Court of Appeals vacated the district court's order appointing a receiver, ruling that "the court below acted improvidently in giving the receiver general powers of operation and management in addition to power to collect rents and profits." 200 F.2d 299, 302 (1st Cir. 1952).  The *Garden* court opined that there was a distinction between a situation justifying appointment of a receiver with power only to collect rents due during the pendency of a suit to foreclose, and a situation justifying appointment of a receiver with the power to manage the property pending foreclosure, as well as to collect rents.  *Id*. at 301.  The *Garden* court observed:

> …a receiver, even of rents and profits, will not generally be appointed on the application of a mortgagee in a suit to foreclose except upon a '***sufficient showing***' of two matters: (1) that the mortgaged property is inadequate security for the debt with interest and costs of suit, and (2) that the mortgagor or other person liable for the debt is insolvent, beyond the jurisdiction "or in such doubtful financial standing that an execution against him for any deficiency would be unavailing." And to warrant the appointment of a receiver to manage and operate mortgaged property pending foreclosure, as well as only to collect its rents and profits during that time, ***more than the above matters must appear***.

*Id*. (citations omitted) (emphasis added).  The *Garden* court further noted that although "a court of equity has power to appoint a receiver when the appointment is 'ancillary to some form of final relief which is appropriate for equity to give,' ***a receiver is not appointed as ancillary relief as a matter of course***." *Id*. (emphasis added).  The *Garden* court continued that "[e]ven when the bill of complaint states a cause of action in equity, the summary remedy by receivership, with the attendant burdensome expense, ***should be resorted to only on a plain showing of some threatened***

*loss or injury to the property, which the receivership would avoid*.” *Id*. (citations omitted) (emphasis added).

Plaintiffs' Complaint demonstrates the drastic and extraordinary nature of the demanded FER, not only due to the FER's appointment over all non-party Property Entities in this case (including over those in which Plaintiffs have zero equity ownership), but also as to the overreaching expanse of the FER's powers over all operations and corporate governance within and among the more than 30 Property Entities.  Plaintiffs provide very detailed numbers for the amount of their investments, loans, and guaranty amounts, yet speak very broadly about the volume and value of Property Entities, seeking a receiver to control Property Entities that other investors own 99.3% of; entities in which *Plaintiffs have zero ownership interest*.  Plaintiffs argue that the "single receivership" is better than "a patchwork of state court receiverships".  Yet, the senior lienholders in the state court actions sought receivers pursuant to a contractual right to a receiver, and many of those actions are still pending and being litigated in state court.  Plaintiffs have no contractual right and no secured interest in the real properties, but would still like to pull the rug out from under the senior lienholders and the majority owners of the Property Entities. Equity will not countenance such a request.

Plaintiffs seek to give the FER vast powers over the non-party Property Entities, again, most of which Plaintiffs do not even own.  Plaintiffs request that the FER have the following powers:

1. Exercise control over the entire Vesta portfolio;
2. Direct a full turnover of all books, records, and bank accounts;
3. Manage and stabilize operations at the properties (including collecting revenues and paying operating expenses);
4. Collaborating with the lenders on value-maximizing transactions and dispositions;
5. Act on behalf of the Receivership Entities in any pending or threatened litigation;

6. Possess sole authority to commence bankruptcy cases on behalf of any Receivership Entity; and

7. Initiate and conduct investigations concerning the Defendants' conduct, including through subpoena powers.

[Dkt. 6 at ¶ 66]. While Plaintiffs aver that the FER's powers would be subject to a lender carveout that preserved senior property-level lenders' rights, Plaintiffs do not explain what the carveout would be or how it would protect the interests of numerous other non-parties implicated by this extraordinary request.

Moreover, Plaintiffs do not explain the end-goal of the receiver. Reading between the lines, Plaintiffs appear to be asking the Court to give the Receiver the power to either have the Property Entities file for bankruptcy or be sold. Plaintiffs seek this relief without the consent of any of the Members and other, larger investors of the Property Entities, which is likely required under each of the Operating Agreements for the Property Entities. Whether to liquidate or conserve the assets of a corporation through the agency of a receivership is used as an end instead of a means, "a federal court of equity will not appoint a receiver where the appointment is not ancillary to some form of final relief which is appropriate for equity to give." *Gordon v. Washington*, 295 U.S. 30, 38 (1935); *see also Kelleam v. Md. Cas. Co. of Baltimore, Md.*, 312 U.S. 377 (1941) ("[I]t is manifest that respondent-surety sought the receivership not as a means to an end but as an end in itself…. Accordingly, a receiver should not have been appointed.").

Typically, as illustrated in the cases cited above herein, a receiver over a single property or entity is sought by a senior lienholder in a foreclosure action to maintain and preserve the collateral during the pendency of the action until the foreclosure sale of the property. Here, Plaintiffs improperly seek a single receiver over more than 30 non-party entities as the "end," rather than a means to the end. Accordingly, this Court should deny the FER Motion.

**CONCLUSION**

The bankruptcy filings by Louis Investments and thirteen of the non-party Property Entities deprive this Court of jurisdiction to appoint the FER sought by Plaintiffs.  Further, Plaintiffs' request for the extraordinary relief of an FER is overly broad, disproportionate to Plaintiffs *de minimus* interests, and wholly fails to satisfy the burden required to invoke this Court's extreme equitable power.  Accordingly, this Court should deny the FER Motion.

Dated:  July 21, 2026

s/ Andrew A. Shank
Andrew A. Shank, OBA #22298
Lacy B. Williamson, OBA #34004
William C. Searcy, OBA #17938
Eller & Detrich, PC
2727 East 21st Street, Suite 200
Tulsa OK 74114
918 747 8900 (Telephone)
918 747 2665 (Facsimile)
ashank@ellerdetrich.com
lwilliamson@ellerdetrich.com

**Certificate of Service**

I hereby certify that on July 21, 2026, I electronically filed the foregoing document with the Clerk of Court for the U.S. District Court for the Northern District of Oklahoma using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who are registered CM/ECF users in this case.

I also certify that on July 21, 2026, I hereby served the same document by email to the following, who are not registered participants of the ECF system:

Marc R. Greenberg – marc.greenberg@tuckerellis.com

Thomas R. Fawkes – Thomas.fawkes@tuckerellis.com

s/Andrew A. Shank
Andrew A. Shank